W. J. MURRAY, State Superintendent of Banking, Appellee, v. FIRST TRUST & SAVINGS BANK OF SIBLEY et al., Appellees; CLYDE L. EDSON, Intervener, Appellant.

BANKS AND BANKING: Savings Banks—Depositor (?) or Money
1    Loaner (?) An actual *depositor* in a savings bank under interest-drawing time certificates of deposit does not cease to be a *depositor* because of the fact that, when he demanded his existing deposit for the purpose of reinvesting in securities drawing an increase of interest over his existing certificates, he was, in good faith on his part, induced to accept from the bank new and long-time certificates of deposit drawing legal interest (part of which was paid in advance) at the rate desired by him, with an oral understanding that he might have his money on demand, by a proportional refund of interest advanced; and it is immaterial that the bank officials, without his knowledge, were not acting in good faith.

BANKS AND BANKING: Savings Banks—Time Certificates of Deposit—Authority to Issue. The issuance of time certificates of deposit by savings banks is clearly contemplated by our statutes (Ch. 413, Code of 1924).

BANKS AND BANKING: Savings Banks—Deposits—Excessive Interest-bearing Certificates. A certificate of deposit issued by a savings bank is not illegal because made to draw an apparently very high rate of interest, to wit, 7½ per cent, nor because part of the interest is paid the depositor in advance, the directors never having fixed any rate of interest on such certificates.

BANKS AND BANKING: Savings Banks—Deposits—Interest Paid in Advance—Receivership—Effect. In case interest is paid a depositor in advance, the termination of the accrual of all interest by the appointment of a receiver necessitates the charging of the deposit with the amount of unearned interest.

Headnote 1:  7 C. J. p. 853 (Anno.)   Headnote 2:   7 C. J. p. 853 (Anno.)   Headnote 3:   7 C. J. p. 873 (Anno.)   Headnote 4:   7 C. J. p. 878 (Anno.)

*Appeal from Osceola District Court.*—C. C. BRADLEY, Judge.

MARCH 16, 1926.

REHEARING DENIED JUNE 21, 1926.

A PROCEEDING in equity by intervention in a pending receivership, whereby the intervener asks that he, as a claimant under certificates of deposit, be classified as a depositor in the insolvent bank. The receiver resisted the claim, and averred that the intervener was a mere money lender to the bank, and that his certificates of deposit represented loans made by him at illegal and usurious rates, and that he was entitled to no classification. The trial court held that he was not entitled to a classification as a depositor, but was entitled to an allowance of his claim as a lender. The intervener appeals.—*Reversed in part; affirmed in part.*

*T. J. Mahoney* and *F. L. Mackey*, for appellant.

*I. R. Meltzer*, for appellee.

EVANS, J.—The First Trust & Savings Bank of Sibley, Iowa, opened for business on June 2, 1919, and continued until

the 4th day of August, 1922.   On that date it was closed by the
banking department and placed in charge of
the present receiver.   The intervener holds five
certificates of deposit, amounting to a sum total
of $4,500.   Four of these certificates are for
$1,000 each, and one of them for $500.   Each of the $1,000
certificates bears date March 1, 1921.   The $500 certificate bears
date February 4, 1922.   Each certificate was drawn payable
to the order of intervener:

1. BANKS AND
BANKING: sav-
ings banks: de-
positor (?) or
money loaner
(?)

"In current funds on the return of this certificate properly
indorsed.   Twelve months after date with interest at 5 per
cent or six months after date with interest at 5 per cent per
annum.

"Not subject to check.
"No interest after maturity.

"C. J. Johnson
"Cashier."

Upon each $1,000 certificate the following memorandum was
entered:

"Not payable until March 1, 1924."   "To run three years,
from date."

On or about March, 1920, the intervener deposited with the
defendant-bank in due course the sum of $5,000, and received
a certificate therefor in the due form above set forth.   Later,
in December, 1920, he deposited the further sum of $2,000, and
received therefor a certificate of deposit in the same form.
There is no room to dispute that these deposits were made in
good faith and in the ordinary course of business, and that the
intervener then and there became a depositor in said bank.   The
money thus deposited was never returned to him, except to the
amount of $500.   In March, 1921, he called for his money.
Being asked by Taylor, the vice president, for a reason for his
proposed withdrawal of the deposit, he stated that he had an
opportunity to place it upon first-mortgage real estate security
at 7½ per cent for three years.   Taylor thereupon said that
the bank would do as well for him, and retain the money.
The result of this conversation was that the intervener acceded

to Taylor's proposal. Renewal certificates were issued for $3,000 and $4,000, respectively, and these were drawn in the form above indicated. Later, these were changed into seven $1,000 certificates in the same form. The 7½ per cent interest was provided for by paying to the plaintiff 2½ per cent interest in advance for three years, making a total of $525. The remainder was provided for by the 5 per cent interest provision in the certificates. It was a part of the oral understanding between the parties that the intervener might demand his money before the expiration of the three-year period. In such event, he was to return the interest received in advance. Pursuant to this arrangement, the intervener did later return the unearned interest on $1,000, and obtained a credit of $500 upon his checking account, and took the $500 certificate involved herein, for the balance of such $1,000 certificate.

The foregoing is the substance of the transaction which appellee challenges as illegal, usurious, and fraudulent, and as having the legal effect to deny to the intervener any recovery on any ground, and especially to deny to him the right to be classified as a depositor. The charge of the appellee is that this arrangement amounted to a fraudulent agreement or conspiracy between intervener and Taylor to deceive the directorate of the bank, and thereby to defraud the bank, and that the intervener became *particeps criminis* with Taylor in such purpose. Each director of the bank testified that he knew nothing of the arrangement. Each testified also that the directorate had never fixed upon any rate of interest which its managing officers were authorized to pay. The managing officers were Taylor, the vice president, and Johnson, the cashier. So far as appears from the record, the business with intervener was done over the counter. To say the least, the claim thus put forth by the appellee is extravagant. The act of the intervener, whether fatal to him or otherwise, was not felonious. Moreover, the district court established his claim as for money loaned, with interest, but denied his classification as a depositor. From such judgment, only the intervener has appealed. The charge of fraud, illegality, and usury is, therefore, foreclosed by the judgment appealed from. The only question left for our consideration is whether he was entitled to be classified as a depositor.

The argument of appellee is predicated upon the theory that the intervener entered into an illegal and corrupt agreement with the vice president of the bank, which agreement invaded the best interest and legal right of the bank itself. The argument assumes that, if the transaction was illegal and corrupt on Taylor's part, as between him and the bank and its directorate, then it was necessarily corrupt as to the intervener. The other aspect of the case, not argued by appellee, presents the question whether the transaction was not a mere scheme on the part of Taylor to deceive the intervener and to conceal from him the fact that his money was already probably lost. The judgment of the district court necessarily adjudicated the question of fraud and corruption on the part of the intervener against the appellee, who has not appealed. The question, therefore, is not now before us for adjudication, although the facts in the case and their legal effect are necessarily before us in passing upon the question whether the nature of the transaction was such as to constitute the intervener a money lender, rather than a depositor. We may say, however, at the outset, that, on the question of alleged fraud and corruption of the intervener, we are in full accord with the negative finding of the district court. The failure of the vice president to advise the directorate of the transaction, or the failure of the directorate to discover the transaction, is not chargeable to the intervener. The customer of a bank is in no position to know whether the officials of the institution are in harmony, or whether they properly exchange business confidences with each other. When the directorate puts a managing officer at the counter, to deal with the public, the customer has a right to believe that his transactions are properly entered upon the books, and that they become known to the directors thereby. This transaction was entered upon the books. The item of $525 was entered upon the books as "advance interest." The testimony of the directors that they knew nothing about it is self-stultifying. The charge of fraud and secrecy is not tenable. The record furnishes no support for it, so far as the intervener is concerned. Nor does it disclose any motive to him to so demean himself. Nor had Taylor any apparent motive to disclose to the intervener his own wrongful purpose in the transaction, or his own betrayal of the confidence of the direc-

torate, if such. The facts are simple, and are already stated herein; and all the inferences of final decision must be predicated upon these alone.

The question before us for adjudication is whether the facts of the transaction under consideration had the legal effect to constitute the intervener a money lender, rather than a depositor. The definite distinction between a deposit and a loan has never been formulated. All attempted definitions recognize the close relation between the two and the difficulty of laying down any specific rule or distinction applicable alike to all cases. A tentative or proximate definition has been put forward, and has frequently received judicial approval, as far as it goes. This is that a deposit is always subject to withdrawal upon the demand of the depositor, whereas a loan is subject to call only on and after its maturity date. The deficiency of this definition is that it takes no account of time deposits, nor of call or demand loans. This definition was approved by this court, as an abstract proposition, in *State ex rel. Carroll v. Corning St. Sav. Bank,* 136 Iowa 79. And yet, in the same case, the holder of a certificate of time deposit, due in twelve months, with 6 per cent interest, was held to be indubitably a depositor, and his claim was classified accordingly. Regardless of specific definition, the courts are agreed that there is a distinction between a deposit and a loan. Whether, in a given case, a transaction is to be deemed a loan or a deposit is a question to be decided upon the facts of that case. Our case of *State ex rel. Carroll v. Corning St. Sav. Bank,* 136 Iowa 79, presents an illustration of the method of differentiation. Two certificates were involved in that case. We have already referred to the first one, which was deemed to represent a deposit. The other certificate was issued in due form to one of the bank officials, as payee, for the purpose of enabling such official to negotiate the certificate. The official did negotiate it, and turned in the proceeds of the negotiation to the bank. The certificate, when issued, represented no deposit, in fact, nor any other consideration, for that matter. It was, therefore, not then representative of a deposit. It was held that the purchaser of the certificate sustained the relation of lender to the bank, and not a depositor.

The definition of the distinction between a loan and a

deposit which we have already set forth is the rule for which appellee contends.  He further contends that a savings bank has

no authority, under our statute, to issue certificates of time deposits.  In support of this contention, reliance is had upon the absence from the statute of any express permission to a savings bank to receive time deposits.  For instance, Section 9181, Code of 1924, provides:

2. BANKS AND BANKING: savings banks: time certificates of deposit: authority to issue.

"Nothing in this chapter 'shall prevent such banks, in their discretion, issuing certificates of deposit payable upon demand.''

No equivalent provision is contained in the statute pertaining to time certificates.  Section 9181 is evidently intended as a qualification or limitation on Section 9179, which provides:

"Savings banks may require sixty days' written notice of the withdrawal of savings deposits, but when there are sufficient funds on hand the officers thereof may, in their discretion, waive **this requirement.**''

Under this construction of Section 9181, there could be no occasion for any reference to time certificates.  However, that the power of savings banks to issue time certificates is contemplated and implied by the statute is rendered very clear by Section 9201, which provides for the cash reserve which the bank must maintain.  This requires the savings bank to maintain a reserve equal to 15 per cent of its demand deposits, and 8 per cent of its "time certificates having a fixed and definite time of maturity.''  It is not claimed that any statute prohibits the issuance of time certificates.  It must be held, therefore, that the savings bank may lawfully receive time deposits, subject to such regulations as its own governing body may make, and subject, of course, to the regulations of the banking department.  Moreover, the case of *State ex rel. Carroll v. Corning St. Sav. Bank,* 136 Iowa 79, is already a controlling precedent in this state on that question.

It is further urged by the appellee that it was illegal and contrary to public policy to issue a time certificate at such a large rate of interest.  The statute conferred power on the board of directors to regulate the rate of interest.  The board of directors of this bank took no action on the

3. BANKS AND BANKING: savings banks: deposits: excessive interest-bearing certificates.

subject of interest. The board did know at all times that the managing officers were paying interest, and advertising that they would pay interest. The failure of the directorate to exercise its function is not chargeable to a depositor. The statute puts no limit upon the rate of interest which a savings bank may pay. In the "brief points" of appellee, we find the following proposition stated:

"In the absence of statutory prohibition to the contrary, a bank deposit may be subject to any agreement which the depositor and the banker may make with respect to it, so long as the rights of third parties are not injuriously affected. 7 Corpus Juris 642, Section 327."

This proposition itself refutes the contention that it was inherently illegal to pay a rate of interest as high as 7½ per cent. It may be conceded to be poor banking, unless justified by some emergency. There may have been such emergency. The point of time was within a period when financial emergencies were prevalent. Whether such emergency existed as would justify the action of the bank was within the exclusive knowledge of the bank officials.

Stress is laid upon the fact that 2½ per cent interest was paid in advance. This also may have been poor banking. Was it illegal? No case is brought to our attention which has ever so characterized the practice. It is a common practice among banks to *collect* their interest in advance. They are under no statutory prohibition against *paying* it in advance. The legality of such practice does not seem ever to have been directly challenged in any case appearing in our Reports. The question was indirectly involved in *Brown v. Cass County Bank*, 86 Iowa 527, wherein it appeared that interest at the highest legal rate had been paid in advance, and such advance payment of the highest legal rate was not deemed to have rendered the interest usurious. The appellant cites many authorities from other states wherein the practice has been recognized as legitimate. These citations include *Sanford v. Lundquist*, 80 Neb. 408 (118 N. W. 129); *Fleckner v. Bank of the United States*, 8 Wheat. (U. S.) 338 (5 L. Ed. 631); and *Fowler v. Equitable Tr. Co.*, 141 U. S. 408 (35 L. Ed. 786). These cases sustain the appellant's position. Appellee's argument is also builded

to some extent on the claim of usury, and upon the want of authority on the part of the managing officers to enter into the transaction under consideration. It is, perhaps, enough to say upon these questions that the judgment of the district court adjudicated them against the appellee, and they are not open for review here. Moreover, if they were open, we think the contention is not well taken. The question simply resolves itself to this: Upon the facts here detailed, was the intervener a depositor or a mere money lender? On that question appellee is entitled to bring all the facts and circumstances surrounding the parties, and to prove oral agreements, notwithstanding the issuance of the written certificates. What finding does the evidence warrant? Is there any evidence of conspiracy or a common hostile purpose between the intervener and Taylor, as against the bank? We find none. We find no circumstance that even gives rise to fair suspicion of any evil collusion on the part of the intervener with the bank official. Each was looking after his own interest, and they dealt with each other at arm's length. If the bank was in trouble, and was thereby driven to an improvident transaction, what motive could there have been for Taylor to divulge that fact to the intervener? What motive can be conceived to the intervener that he would be willing at all to leave his money in a bank already in distress? The theory, therefore, of fraudulent collusion between Taylor and the intervener must be rejected without reserve. At the time of the transaction, the intervener was a depositor. The bank had obtained his money one year prior, as a deposit. It was never in form withdrawn. The new certificates of deposit purported to still recognize the deposit as such. So far as the mere written evidence was concerned, the transaction was a mere continuance of the deposit. There is no oral evidence that contradicts the language of these certificates, except as unfavorable inferences may be drawn. The intervener did receive 2½ per cent interest for three years in advance. He did orally reserve the right to withdraw his money if he needed it. He did later withdraw $500 of it, and, pursuant to the understanding, returned the advance interest which had been paid thereon. The subject-matter of the transaction between them was the existing deposit, which was already in the hands of the

bank. Without doubt, Taylor considered it a continuance of the deposit. Without doubt, also, the intervener considered it a continuance of the deposit. What is there in the extraneous facts produced which forbids such consideration of it? If it is to be said that the deposit became converted into a loan, it must be put, not on the ground that the parties so intended it, but that it became such by implication of law *ex maleficio*. And such is the purport of the argument for appellee. It cannot be sustained, upon this record. Whatever wrongdoing appears in this transaction must be charged to the bank official. If the transaction amounted to a spoliation, the intervener was the victim of it, and not its perpetrator. His complete robbery was accomplished, and we need not speculate too finely whether it was accomplished in this transaction or whether it had been already accomplished before the transaction was had. We think his claim is entitled to classification as a deposit, and the decree of the district court is modified accordingly.

In this connection the question of interest accrued is to be considered. The effect of the receivership was to terminate the accrual of interest on all claims, for the purpose of distribution of the insolvent estate. The result is that the

4. BANKS AND BANKING: savings banks: deposits: interest paid in advance: receivership: effect.

advance interest paid the intervener became unearned *pro tanto*. Equity requires, therefore, that so much of such advance interest as had not been earned by accrual up to the date of the receivership should be charged as a partial payment against intervener's claim.

The decree of the district court having sustained the validity of the claim as a debt, we have no occasion to reverse or interfere with that finding.—*Reversed in part; affirmed in part.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.