12506

### EX PARTE DISTRICT GRAND LODGE, NO. 13, G. U. O. O. F. STATE EX REL. BRADLEY, STATE BANK EXAMINER, v. PEOPLE'S FEDERATION BANK *ET AL.*

(144 S. E., 841)

June, 1927.

The decree and exceptions directed to be reported are as follows:

## DECREE

This matter comes before me on the petition of District Grand Lodge No. 13 of the Grand United Order of Odd Fellows of South Carolina, praying that this Court order the receiver of the defunct the People's Federation Bank of Charleston to pay over to the said lodge the amount of the deposit in the said bank to the credit of the lodge.

The petition is resisted by the Receiver.

The facts of the case are admitted by counsel for the parties, the question before this Court being the proper construction of a contract.

It seems that the People's Federation Bank was a banking corporation created under the laws of the State of South Carolina, and as such engaged in a general banking business until the 7th day of September, 1926, on which date it closed its doors. On September 25, 1926, this Court appointed Charles W. Waring, Esq., Receiver of the defunct institution with the usual powers of liquidation.

On June 2, 1926, the Grand Lodge above-named had on deposit in the savings department of the said bank the sum of $19,873, drawing 4 per cent. interest under its contract with the bank; the deposit on July 1, 1926, the quarterly interest date, amounting to $20,071.73.

On June 2, 1926, the Grand Lodge and the bank entered into the following contract, being in writing but not under seal:

(Copy of Contract.)†

The $30,000 bond was thereupon duly delivered to the Grand Lodge and was in its possession on September 7, 1926, when the bank closed its doors.

---

†See opinion, page 109.

The Grand Lodge made no further deposits in the bank from June 2 to September 7, 1926, and when the bank closed its doors had on deposit therein the same sum of money which it had therein on June 2, together with the quarterly interest due on July 1st.

The record does not show that there was ever made by the bank any demand upon the Grand Lodge to make any additional deposit after June 2.

On November 24, 1926, this Court ordered and directed the Grand Lodge to deliver the said bond to the Receiver of the bank. The said Receiver has collected the amount of the debt evidenced by the said bond from the obligors thereon and is holding the fund subject to the order of this Court.

The Grand Lodge now petitions this Court for an order directing the Receiver of the bank to pay over to it the entire amount of its deposit, alleging that it was secured by the collateral bond which has now been collected.

The Receiver, representing the creditors of the defunct bank, resists the petition of the Grand Lodge on the following two grounds:

(1) That a proper construction of the contract is that the collateral bond was to have been given by the bank only to secure an additional deposit of $5,000 to be made by the Grand Lodge, and was not to have been given to secure the deposit actually in the bank on the date of the contract.

(2) That even though it be held that the collateral bond was given as security for the amount on deposit to the credit of the Grand Lodge on the date of the contract, that as to the Receiver representing innocent third parties the contract should be declared void for lack of consideration, since the consideration named in the contract, viz., the deposit by the Grand Lodge of an additional sum of $5,000, was never executed.

At first impression the contract appears to be ambiguous. But a consideration of the entire contract in all of its terms in my opinion discloses the meeting of the minds. A bond

of $30,000 would hardly be given to secure a deposit of only $5,000. And if the collateral bond was to secure simply the $5,000 which the Grand Lodge was "willing to deposit," it would certainly not have been delivered until such additional deposit was actually made.

I am therefore of the opinion that the collateral bond was given under contract to secure the entire deposit of the Grand Lodge in the bank.

And in my opinion the leaving on deposit in the bank by the Grand Lodge of a sum of over $20,000 was sufficient consideration to support the contract for the delivery by the bank of the collateral security for same. No demands appear to have been made upon the Grand Lodge for any additional deposit, and certainly no additional deposit could have been made after September 7, 1926, on which day the bank closed its doors.

It is therefore ordered, adjudged, and decreed that the Receiver do pay over to the proper officers of the said Grand Lodge the sum of $20,071.73, together with interest thereon at the rate of 4 per cent. per annum from July 1, 1926, to September 7, 1926.

#### EXCEPTIONS

The appellant respectfully submits that the Circuit Judge erred in the following particulars:

1. In holding that the bond given by the bank was given to secure the deposit of $19,873.

2. In holding that the bond given by the bank was given to secure the deposit of $20,071.73.

3. In holding that the bond given by the bank was not contingent upon the deposit of an additional amount so as to bring total deposit up to $25,000.

4. In holding that the bond given by the bank was not contingent upon the deposit of an additional amount of $5,000.

5. In holding that the contract was binding upon the bank, the acts to be performed by the depositor not having been performed.

6. In holding that there was any consideration moving from the depositor to the bank to sustain said contract.

7. In failing to hold that the said contract had become null and void by the failure of the depositor to carry out and perform the conditions and obligations thereof.

8. In ordering the Receiver to pay over to the depositor the full amount of the deposit.

9. In giving a preference to the indebtedness due this depositor over other depositors.

*Messrs. Waring & Brockinton,* for appellant,

*Messrs. Walter Hazard,* and *J. I. Washington,* for respondent,

October 3, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The main cause herein involves the liquidation of the People's Federation Bank of Charleston, S. C., wherein Charles W. Waring was appointed Receiver. By petition filed in the cause, dated February 5, 1927, the District Grand Lodge No. 13, of South Carolina, Grand United Order of Odd Fellows (referred to herein as the "lodge"), asked the Court to construe a contract between the Lodge and the bank, and to direct the Receiver of said bank to pay over to the Lodge the full amount of the deposit in the bank, referred to in the petition, contending that the Lodge was entitled to a preference as to said deposit. The Receiver in his answer denied that the Lodge was entitled to preferential payment.

The parties having entered into a stipulation as to the facts involved, the matter was submitted to Judge William H. Grimball, at his chambers, at Charleston, for a hearing. After a full hearing and due consideration, his Honor, Judge Grimball, issued a decree directing the Receiver to pay over to the Lodge the sum in question, $20,071.73, with interest. From this decree and judgment, the Receiver has appealed to this Court, and asks a reversal upon the grounds set forth in the exceptions.

For a full understanding of the questions involved in the appeal, we quote herewith the contract between the parties and the stipulation as to the facts in the case. We call attention to the fact that no question of unlawful preference is raised in the return to the petition and there is no testimony on the question.

CONTRACT

"The State of South Carolina.

"Memorandum of agreement made this 2d day of June, nineteen hundred and twenty-six, by and between the People's Federation Bank of Charleston, S. C., hereinafter styled the party of the first part, and District Grand Lodge No. 13, Grand United Order of Odd Fellows in South Carolina, hereinafter styled the party of the second part, witnesseth:

"Whereas, the party of the second part has on deposit in the People's Federation Bank of Charleston, S. C., the sum of twenty thousand seventy-one and 73/100 ($20,071.73) dollars, subject to the rules and regulations of said bank; and

"Whereas, the party of the second part is willing to deposit five thousand dollars more in said account to its credit in said bank, provided the party of the first part is willing to secure said deposit; and

"Whereas, the party of the first part is willing to secure said deposit, and has agreed to do so.

"Now this agreement further witnesseth:

"That the party of the first part hereby pledges and delivers to the party of the second part as collateral security for said deposit the bond of N. H. Collins, et al., trustees of Bethel A. M. E. Church, to the People's Federation Bank, dated the tenth day of June, 1921, to secure the payment of thirty thousaand dollars as therein set forth, together with the mortgage securing same, which said mortgage is dated the tenth day of June, 1921, and is duly recorded in the office

of the register of mesne conveyance for Richland County, S. C., in Volume C. J., page 69.

"It is distinctly understood and agreed by the parties hereto that the party of the first part shall alone have the right to collect the principal and interest due on said bond and mortgage and shall have the right, if necessary or advisable, to foreclose said bond and mortgage in its own name: Provided, however, that the said party of the first part shall promptly notify the said party of the second part of any collections on the principal of the said bond and mortgage, and should at any time the amount due on the principal of said mortgage be less than the amount on deposit, that then the party of the first part agrees to furnish additional collateral of sufficient value to protect said deposit.

"And, it is further agreed, that in case it is necessary to foreclose said mortgage that the party of the first part shall have the right to require possession of the said bond and mortgage upon furnishing to the party of the second part other collateral of similar value in their place and stead.

"It is further understood and agreed that this delivery of said bond and mortgage is simply as a pledge or collateral security for the said deposit, and should the said deposit be withdrawn in accordance with the rules of said bank, that then the party of the second part shall forthwith return the said collateral to the party of the first part, and should the said party of the second part under the rules of said bank withdraw any substantial part of said deposit, that then and in that case the said party of the first part shall then have the right to. withdraw the said security and substitute other collateral of value equal to the amount remaining on deposit in said bank.

"In witness whereof the parties hereto have duly executed this agreement by their proper officers the day and year first above written.

"The People's Federation Bank,
  "By J. E. Beard, President,
    "Wm. H. Johnson, Cashier.
"Grand United Order of Odd Fellows,
  "By I. J. McCottrie, D. G. M.,
    "H. H. Butler, D. G. S.
"In the presence of:
  "F. R. Blanchard.
  "Chris. F. Simmons.
  "George Pugh.
  "Lizzie Buchanan."

### STIPULATION

"The undersigned attorneys, representing the petitioner and respondent in the above-entitled cause, do hereby stipulate and agree that the facts hereinbelow set forth shall constitute an agreed statement of facts in said cause.

"1. That the People's Federation Bank was a banking corporation created under the laws of the state of South Carolina, and was engaged in general banking business on or about the 2d day of June, 1926, in the City of Charleston, S. C., and that said bank closed its doors on the 7th day of September, 1926, and was thereafter declared insolvent, and Charles W. Waring was duly appointed receiver to liquidate said bank by an order of the Court of Common Pleas for Charleston county, dated September 25, 1926.

"2. That on or about the 2d day of June, 1926, the District Grand Lodge No. 13, Grand United Order of Odd Fellows of South Carolina, had on deposit in the savings department in said People's Federation Bank of Charleston, S. C., the sum of nineteen thousand eight hundred seventy-three ($19,873.00) dollars.

"3. That on or about the 2d day of June, 1926, an agreement was entered into between the petitioner and respondent herein, a true copy thereof having been attached to and made a part and parcel of the answer of respondent.

"4. That the District Grand Lodge No. 13, Grand United Order of Odd Fellows of South Carolina, did not make any deposit of June, 1926, but the interest accruing on said savings deposit as of July 1, 1926, amounting to one hundred ninety-eight and 73/100 ($198.73) dollars, was credited to the deposit and brought the same up to twenty thousand and seventy-one and 73/100 ($20,071.73) dollars as of July 1, 1926, and that its deposit hereinabove referred to was the same on September 7, 1926, the day the bank closed, as it was on July 1, 1926.

"5. That no further agreements of any kind or character have been entered into between the parties herein in respect to the said deposit.

"J. I. Washington,

"Attorney for Petitioner, District Grand Lodge No. 13, Grand United Order of Odd Fellows of S. C.

"Waring & Brockinton,

"Attorneys for Respondent, Charles W. Waring, Receiver of the People's Federation Bank of Charleston, S. C.

"Dated June 2, 1927."

We agree with the conclusion reached by Judge Grimball, and for the reasons stated in the decree issued by his Honor, the exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE STABLER concur.

MR. JUSTICE COTHRAN (dissenting) : The contention of the Grand Lodge in this case does not appeal to my judicial conscience. In the first place, it is opposed to the salutary and just principle announced by this Court, tersely expressed by Justice Woods in the case of *Livingstain v. Banking Co.*, 77 S. C., 305; 57 S. E., 182; 22 L. R. A. (N. S.), 442; 122 Am. St. Rep., 568: "No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among

creditors," and approved in the case of *Bank v. Bradley*, 136 S. C., 511; 134 S. E., 510; for if its contention be sustained, over $20,000 of the assets of the defunct bank will be applied to the claim of the Grand Lodge, as a preferred creditor, greatly to the embarrassment of the general creditors.

The facts of the case appear to be as follows:

On June 2, 1926, the Grand Lodge had upon deposit in the savings department of the bank $19,873, at 4 per cent. interest, payable quarterly—January, May, July, October. Neither the principal nor the interest was at that time demandable. The interest was not due until July 1st, and I assume, as is customary, the principal was not demandable until after certain notice would be given. Notwithstanding this fact, and in the absence of all evidence that the Grand Lodge was pressing for its money which it had no right at that time to demand, a written contract was entered into between the bank and the Grand Lodge, by which, in the stated consideration of the deposit indebtedness and the expression of the "willingness" of the Grand Lodge to make an additional deposit of $5,000, the bank "pledged and delivered" to the Grand Lodge a certain bond and mortgage of Collins et al., dated June 10, 1921, for $30,000, as collateral security to "said deposit." No offer was made by the Grand Lodge to deposit the additional $5,000, and no demand was made by the bank for it. It appears that the bond was delivered by the bank to the Grand Lodge, but the mortgage remained in the possession of the bank. In the contract the amount of the deposit was declared to be $20,-071.73, which was made up of the principal of the deposit, $19,873, and $198.73, the quarterly interest which was not due until July 1st thereafter.

On September 7, 1926, three months thereafter, the bank closed its doors and was declared insolvent. Charles W. Waring was appointed Receiver of the bank, for liquidation, by an order of Court. The Receiver then obtained from the Court a rule to show cause why the bond should not be

turned over by the Grand Lodge to him for the purpose of foreclosing the Collins mortgage. The Grand Lodge claimed the bond and the mortgage under the contract of pledge above referred to. They were by agreement delivered to the Receiver with the understanding that the bond should be collected and the proceeds held by the Receiver until the controversy between the Grand Lodge and the Receiver should be determined by the Court. The collection was made and the proceeds are now in the hands of the Receiver.

On February 5, 1927, the Grand Lodge filed its petition in the cause in which the Receiver had been appointed, setting out the facts as above outlined. The prayer of the petition is as follows:

"Wherefore, your petitioners pray that an order be issued requiring the Receiver to pay over to the proper officers of the said Lodge the sum of twenty thousand seventy-one and 73/100 ($20,071.73) dollars, with interest at 4 per cent. from the date of deposit of said sum in said bank up to the date of failure of the bank, out of the money collected by him on said bond, the sum being a preferred claim under its lien on said bond."

The Receiver answered the petition denying the right of the Grand Lodge to the order applied for. The matter was then heard by his Honor, Judge Grimball, upon the petition, the answer, the contract of June 2, 1926, and the "stipulation" of counsel set forth in the opinion of Mr. Justice Carter. On June 4, 1927, his Honor, Judge Grimball, filed his decree in which he sustained the pledge of the collateral Collins bond and mortgage, and "ordered, adjudged, and decreed that the Receiver do pay over to the proper officers of the said Grand Lodge the sum of $20,071.73, together with interest thereon at the rate of 4 per cent. per annum from July 1, 1926, to September 7, 1926." His Honor held, over the contention of the Receiver, that the collateral was given under the contract to secure the entire deposit of the Grand Lodge, and not simply the $5,000 additional deposit referred

to in the contract, and that the contract was supported by a valuable consideration.

I think that his Honor has properly construed the contract, but he did not pass upon what to my mind is the crucial issue in the case, the unlawful preference which the bank attempted to confer upon the Grand Lodge, suggested in the appellant's ninth exception, which, however, was not raised in his return.

I adopt the statement made by counsel for the Grand Lodge, in his printed argument:

"In addition to these considerations, it is also to be borne in mind that this contract was made only three months prior to the failure of the bank, and when it may reasonably be presumed that the bank was struggling with financial difficulties and facing possible, if not probable, insolvency. It could hardly be supposed that the bank was entirely solvent only three months before its doors were closed and it passed into the hands of a Receiver."

If that be true, and the Grand Lodge is not now in a position to deny it, it is clear that the bank in an insolvent condition had no right to assign to the Grand Lodge what may be assumed to have been a substantial part of its assets in preference to its general creditors.

There are circumstances which strongly indicate a purpose to prefer the Grand Lodge. The bank was an institution owned and operated by colored people; the Grand Lodge was a colored institution. The Court may take judicial cognizance of the supreme adoration entertained by this class of our citizens for an institution of the kind; doubtless the officers of the bank were connected with it and personally interested in its charitable purposes. Neither the principal nor the interest on the deposit was demandable at the time of the pledge, and no effort appears to have been made by the Grand Lodge to enforce its demands. The interest was not due for 30 days, yet it was included in what was stated as the amount of the deposit. The expressed willingness

to make an additional deposit of $5,000 evidently was suggested to strengthen the consideration of the contract; it was never offered nor demanded. Not that this invalidated the contract which, as held by his Honor, Judge Grimball, needed no other consideration than the outsanding deposit. Circumstances of meticulous care in presenting a *bona fide* face to a transaction excite suspicion. The fact that the additional deposit was not offered or demanded leads to the conviction that such was never intended; the vagueness of it suggests camouflage.

This is a Court of equity; the Receiver is an officer of the Court; and the two are virtually trustees for the general creditors of the bank. In view of the fact that the point herein suggested was not raised in the answer to the petition, evidently was not presented to the able Judge, for he makes no allusion to it, is barely suggested in the exceptions, it might well have been ignored, but for the serious consequences to the general creditors; and to decide it under these circumstances might work an injustice to the Grand Lodge.

I think, therefore, that the decree should be reversed, and the case remanded to the Circuit Court with leave to the Receiver to amend his answer to the petition as he may be advised and for further proceedings.

Mr. Justice Blease concurs.