## SCHUMACHER v. EASTERN BANK & TRUST CO.

### No. 3184.

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

Julius F. Duncan, of Beaufort, N. C., and J. O. Carr, of Wilmington, N. C., for appellant.

T. D. Warren and L. I. Moore, both of New Bern, N. C. (Moore & Dunn and Warren & Warren, all of New Bern, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted by the receiver of the First National Bank of New Bern, N. C., against the Eastern Bank & Trust Company of that city. The purpose of the suit was to secure possession of certain notes and other securities pledged to the trust company by the bank as collateral security, and to have the pledge declared void. From a decree in favor of the defendant trust company, the receiver has appealed.

The facts may be briefly stated: In the year 1929 the First National Bank and the Eastern Bank & Trust Company, a state banking institution, were engaged in business in the same block in the city of New Bern, N. C. The bank being in need of funds, its president on the 17th day of June, 1929, approached the officers of the trust company and secured a loan of $15,000, assigning and pledging as collateral sundry notes and other securities. In like manner $10,000 was obtained on June 21st, $10,000 on June 28th, $3,500 on August 30th, $10,000 on September 7th, $3,000 on September 21st, and $10,000 on October 9th, making a total of $61,500. On each of these occasions, except on June 28th and August 30th, the bank assigned and pledged notes and other securities as collateral and executed written assignments, reciting that the trust company had deposited with the bank the amount received at the time, which was to bear interest at the rate of 6 per cent. per annum, and that the bank desired to secure the prompt payment of same on demand. The written assignments listed the notes and other securities which were assigned as collateral; and these were at the same time indorsed and delivered to the trust company. The instruments of assignment contained agreements that the securities pledged should secure antecedent and subsequent indebtedness of the bank as well as the debts specifically mentioned, and that, upon failure of the bank to pay the deposits with interest, the trust company might proceed to sell the securities.

The amounts so advanced were charged by the trust company to the bank, and were carried in its reports as "Due from Banks." They were credited to the trust company on the ledger of the bank, and were reported by it as "Due to Banks." The bank opened no deposit account for the trust company, issued no certificates of deposit to it, and did not include the amounts so advanced to it by the trust company in its report of deposits; and the trust company, on its part, never at any time attempted to check against the amounts advanced to the bank. On the other hand, no notes for the amounts advanced were given by the bank, and the trust company did not list the amounts advanced among loans and discounts. The whole matter was handled by both banks, on their books and in their reports, as an indebtedness between banks. It appears that it was handled in this way because the president of the bank did not wish to show additional bills payable in his reports.

There is no evidence that any transfer or assignment of collateral was given for the purpose of creating a preference. On the contrary, money was actually advanced at the time of each assignment; and there is no question but that the securities are held by the trust company in good faith and for a present consideration. While the point is made that the president of the bank was without authority to pledge its assets as security, it is not disputed that the directors were notified of what was being done and that the bank received full value for the amounts secured by the assignments. The capital and surplus of the trust company was $175,000, and under the laws and regulations of the banking department of North Carolina it was permitted to lend to one person not exceeding 25 per cent. of this amount; but the evidence is uncontradicted that its transactions with the bank were fully reported to the state banking officials who had supervision over it.

The bank closed its doors on October 26, 1929, and the plaintiff receiver took charge of its affairs. In March, 1930, he instituted this suit, asking that the notes and other securities pledged with the trust company be delivered to him, and that the pledge and assignment of same be held to be ultra vires and void. His contention rests upon two propositions: (1) That the transactions under which the advancements were made by the trust company to the bank were not loans but deposits, and (2) that the bank and its officials were without power to pledge its assets to secure such deposits. The judge below held that the transactions were loans and not deposits, and that the trust company was entitled to hold as collateral the notes and securities pledged to it.

The whole case of the receiver depends upon his first proposition. If the advances were loans, it is conceded that the officers of the bank had power to pledge its assets to secure same; and this is manifestly correct. Burrowes v. Nimocks (C. C. A. 4th) 35 F.(2d) 152, 154, 155; 3 R. C. L. 450, 451. And we think that they were correctly held to be loans. It matters not what the parties may have called them in the instruments of assignment. Equity regards substance and not form, and is not bound by the names which parties may have given their transactions. While the legal effect of a deposit is a loan to the bank, so that the relation of debtor and creditor is created between the bank and the depositor (New York County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199,

48 L. Ed. 380), there is this distinction between a loan and a deposit as these words are used in common parlance: A loan is primarily for the benefit of the bank; a deposit is primarily for the benefit of the depositor. A loan is not subject to check; a deposit ordinarily is. A loan usually arises from the necessities of the borrowing bank; a deposit, from the confidence of the depositor in its strength. A loan ordinarily is sought by the bank for its own purposes; a deposit is ordinarily made by the depositor for purposes of his own.

█ In the light of these distinctions, we think that there can be no question but that the advancements here were loans. They were sought by the bank because of its need of money. They did not create an account subject to check, and no certificates of deposit were issued for them. The debt to which they gave rise bore interest, and same was carried on the books of both banks, not as a deposit, but as an amount due between banks. The trust company's officials clearly understood that it was lending money when it made the advancements, and the officials of the bank just as clearly understood that it was borrowing when it received them. Banks, of course, do make deposits in other banks; but such deposits are usually made in banks at a distance for the purpose of clearing checks and other banking purposes, and not, as here, to banks located in the same city block. Whether a transaction is to be deemed a loan or a deposit depends upon the facts of the particular case. Murray v. First Trust & Savings Bank, 201 Iowa, 1325, 207 N. W. 781. And under the facts here disclosed the transactions were so clearly loans that the reference to them as deposits in the assignments is without significance. The Supreme Court in Bank v. Lanier, 11 Wall. 369, 375, 20 L. Ed. 172, having under consideration the right of a national bank to make loans on the security of its stock, held that the deposit of funds by one bank with another was nothing but a loan within the spirit of that law, and there is no reason why such a transaction should be placed upon a different basis here.

The case of Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640, is very much in point. In that case it appeared that the First National Bank of Palatka, Fla., was indebted at the time of its failure to the Bank of Jacksonville for borrowed money, and that the debt was evidenced by a certificate of deposit secured by the pledge of notes as collateral security. No one seems to have raised the question that the bank was without authority to pledge its assets to secure the loan evidenced by the certificate, but the question was raised as to the rights of the creditor bank with respect to proving its claim and applying its collateral. The rule was laid down that the creditor, while availing itself of the collateral pledged, might prove for the full amount of the claim, subject to the proviso that dividends must cease when the claim was paid in full; and it may safely be assumed that, if a national bank were without power to pledge its assets to secure a loan evidenced by a certificate of deposit which it had issued, the Supreme Court would not have held that the National Bank of Jacksonville had the right to apply upon the certificate of deposit the collateral which had been pledged to it.

Whether a bank may pledge its assets for the security of an ordinary depositor is a question as to which there is conflict of authority. For cases denying such power, see Smith v. B. & O. R. Co. (D. C.) 48 F.(2d) 861; Divide County v. Baird, Receiver, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296; Farmers' & Merchants' State Bank v. Consolidated School District, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407. For cases asserting it, see Ward v. Johnson, 95 Ill. 215; Ahl v. Rhoads, 84 Pa. 319; Cameron v. Christy, 286 Pa. 405, 133 A. 551; Richards v. Osceola Bank, 79 Iowa, 707, 45 N. W. 294; McFerson v. National Surety Co., 72 Colo. 482, 212 P. 489; Ex parte Grand Lodge, G. U. O. O. F. (State ex rel. Bradley v. People's Federation Bank) 147 S. C. 103, 144 S. E. 841; Williams v. Hall, 30 Ariz. 581, 249 P. 755; Grigsby v. People's Bank, 158 Tenn. 182, 11 S.W.(2d) 673. And as bearing on the question generally, see notes in 51 A. L. R. 313, and 65 A. L. R. 1412. Although some of the cases draw a distinction between a pledge of assets to secure a deposit of public funds and a pledge to secure a private deposit, there would seem to be, in the absence of statute, no valid basis for such distinction; and this court has expressly upheld a pledge of assets by a national bank to secure a deposit of public funds. Burrowes v. Nimocks, supra. And the Supreme Court of North Carolina has upheld the pledge of assets to indemnify a surety on a bond given to secure a deposit of public funds. Richmond County v. Page Trust Co., 195 N. C. 545, 142 S. E. 786; Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795, 797.

In the case last cited what was said by Mr. Justice Connor of the Supreme Court of

North Carolina bears directly upon the implied power of a bank to pledge its assets for the security of a deposit. Said he: "Whether or not a banking corporation, organized and doing business under the laws of this state, has the power, without statutory authority, to transfer or assign any part of its assets as security for one or more of its depositors, is not presented by this appeal. The power of such corporation to so secure a creditor who loans money to the bank is well-sustained by authoritative decisions of the courts. It does not seem to have been questioned. The relation between the bank and its depositor is that of debtor and creditor. We perceive no distinction on principle between one who deposits money with a bank, subject to check, and one who loans money to the bank for a definite time, as regards this question. There is no statute in this state forbidding a transfer or assignment by a bank of its property as security for one who is a depositor in the bank. Whether a sound policy forbids such transfer or assignment must be determined by the General Assembly, and not by this court."

And the rule is thus stated in Morse on Banks and Banking (6th Ed.) vol. 1, § 63, p. 182: "Whenever a bank may rightfully borrow on time, it can give its negotiable note on time, and a bank may secure persons who loan it money by deposit or on time by a mortgage of its property, (but not of its franchises,) and may establish an investment department, in which certificates issued for loans and deposits are secured by the transfer to a trustee of negotiable paper, to be held by him solely for the benefit of depositors and others dealing with the bank, and thereby give them precedence over its general creditors not so secured. Such a power is a mere incident of the right to receive deposits, which by necessary implication gives power to assign, and mortgage negotiable instruments as security for them, and to do all other acts that the nature of such business involves, on the principles of prudent commercial conduct."

■ Of course, a pledge of assets in contemplation of insolvency for the sake of creating a preference is avoided by section 5242 of the Revised Statutes (12 USCA § 91); but, in the absence of a preferential transfer in contemplation of insolvency, there is no federal statute under which a pledge of assets as security for a loan or deposit may be avoided. See Paton's Digest of Banking Law (1926) vol. 1, § 641.

■ But, without deciding what would be the rule in the case of an ordinary private deposit, we are satisfied that deposits by a bank, such as those involved here, made as loans to and for the accommodation of the bank in which they are made, do not come within that category. Both in principle and as a matter of practice such deposits by banks are clearly distinguishable from the ordinary private deposits which the depositor makes for his own benefit. Just like other loans, they are sought for the advantage of the bank in which they are made, and are ordinarily secured by pledge of securities. They cannot mislead the public as to the status of the bank; for they are reported as due to banks and in a separate classification from ordinary deposits. As we said of the deposit of public funds in Burrowes v. Nimocks, supra, which was obtained under promise to pledge assets as security, they are "more nearly analogous to a call loan than to an ordinary deposit." Or, to quote from Bank v. Lanier, supra, which dealt with just such a deposit as we have here, they are "nothing but a loan of money." It is a common practice for banks when in need of funds to solicit deposits from banks more fortunately situated; and we see no reason in law, in logic, or in public policy for holding that they may not secure such deposits, which are in effect loans, by a pledge of their assets.

■ It is argued that the transactions in question must be treated as deposits and not as loans, because it is said that the parties must have intended not to violate the law which forbade the trust company to lend more than 25 per cent. of its capital and surplus. As a matter of fact, the aggregate of the first four loans did not exceed the amount which the trust company might lawfully lend; and it is clear from this, we think, that the form which the advancements took was not adopted with any reference to the law in question. But at all events, we must decide the question presented on the basis of the inherent nature of the transactions, and not with reference to their form. Neither the fact that the trust company exceeded its legal limit of loans, nor that the bank sought to avoid showing an increase of bills payable, would have authorized the bank to retake the securities it had pledged for the repayment of the money borrowed (Nat. Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; 7 C. J. 713 and cases cited); and it is well settled that, where there is no preferential transfer in contemplation of insolvency, the receiver

has no greater right in securities pledged than the bank itself would have had. See Burrowes v. Nimocks, supra, and cases there cited.

For the reasons stated, we think that the decree of the court below was correct, and same will accordingly be affirmed.

Affirmed.