D. W. Bates, Superintendent of Banking, Plaintiff, Appellant, v. Farmers State Bank of Audubon, Defendant, Charles Tunman, Jr., Claimant, Appellee.

No. 43293.

June 19, 1936.

J. B. Ryan and Leonard L. Ryan and Graham & Graham, for appellant.

C. S. White and Genung & Genung, for appellee.

Richards, J.—On February 1, 1933, the Superintendent of Banking took over the management of the Farmers State Bank of Audubon, Iowa, under Chapter 156 of the Acts of the Forty-fifth General Assembly. This status continued until August 1, 1933, when the Superintendent was appointed as receiver. On September 6, 1933, appellee filed his claim consisting of a certificate of deposit for $18,000, bearing four per cent interest, issued by the bank on January 30, 1933, payable to appellee. The amount claimed was $18,000 principal and $360 accrued interest. On September 1, 1934, the receiver filed his report and recommendations on allowance and rejection of claims filed. Exhibit "G" of the report lists "pendent claims", without classification, and asks that the court fix a day for hearing thereon. Among these "pendent claims" appeared that of appellee. Later objections were filed by appellee to the report and

to the failure of the receiver to recommend allowance of appellee's claim as a deposit liability. Upon a trial, the court entered an order allowing appellee's claim in sum of $18,360 as a liability for a deposit. Therefrom the receiver has taken this appeal.

Appellant's resistance to the claim is based on the contention that the bank received no funds from appellee at the time of the issuance of the certificate and that appellee was not a depositor of any part of the $18,000. In reply thereto appellee says that the subject matter of the transaction of the issuance of the certificate of deposit was an existing deposit of $18,000 that appellee had in the bank. Upon this issue the following evidence appears in the record.

For many years appellee had been a depositor in this bank. On June 30, 1931, among other deposits he held a certificate for $6,966.72, known as exhibit "2", and one for $11,024, known as exhibit "3". At about 8:30 on the morning of the mentioned date, Miss Harriet Bilharz, the bank's cashier, meeting appellee on the street on her way to the bank, advised appellee she wished to see him. Soon thereafter appellee walked down the street and went inside the bank. In a conversation then had Miss Bilharz informed appellee that she had a party who wanted to borrow $18,000, to be secured by first mortgage upon real estate at five per cent interest, and that she would look after the matter and the drawing of the papers if appellee desired to so invest the money represented by the two certificates, exhibits "2" and "3". Appellee expressed his approval, and to effect such real estate loan appellee, during the conference, endorsed the two certificates and turned them over to Miss Bilharz as the $18,000 to be so invested. The interest on the two certificates was calculated and the gross amount being in excess of $18,000, Miss Bilharz paid to appellee $350 in cash. This transaction was in the directors' room of the bank, probably before the doors of the bank were opened to the public, although the bank's vault, containing the safety deposit boxes, was open at the time. No part of the contemplated investment of the $18,000 was ever carried out.

After the above occurrence the history of the two certificates, exhibits "2" and "3" is for the most part found in the transactions of the bank as shown by its records of its banking transactions. On the bank's journal is an entry that on July 6,

1931, the certificate for $6,966.72 was paid, together with $139.32 accrued interest. The certificate bears the bank's "paid" stamp and was among the records of the bank when taken over by appellant. The bank's records show that the certificate for $11,024 was canceled and marked "paid" by the bank on July 17, 1931, and that proceeds therefrom were credited to appellee's checking account in the bank in the sum of $10,894.48. This latter amount was arrived at by adding to the principal the sum of $220.48 accumulated interest and deducting the above mentioned item of $350 interest paid June 30, 1931. After this deposit of $10,894.48 was credited to appellee's checking account, the book entries of the bank show that on July 17, 1931, the bank charged against this account the sum of $5,000, and on July 18, 1931, charged the further sum of $5,894.48 which exhausted the deposit. Appellee neither authorized nor had knowledge of either of said charges made by the bank against his account, nor in fact did he know at the time that the said credit had been made to his checking account out of the proceeds of the certificate.

The district court held that these transactions were not effectual as a payment or discharge of the bank's liability upon the certificates, exhibits "2" and "3", and that appellee continued to be a depositor in the sum of $18,000 on January 30, 1933, and that at that time the certificate in controversy was issued as a continuance of the deposit, and as evidence of the deposits in lieu of the earlier certificates, exhibits "2" and "3". Appellant says that there was error in so holding because the record shows that Miss Bilharz, although cashier of the bank, procured the two certificates while acting in her individual capacity, and with the wrongful intent to personally benefit thereby, and appellant further claims the record shows that Miss Bilharz personally received the proceeds of the two certificates. Appellant further contends that the bank was not chargeable with any notice or knowledge of the limited authority of Miss Bilharz with respect to the two certificates, because she was acting wrongfully in her personal capacity during the conference on the morning of June 30, 1931.

We think the last mentioned contention as to knowledge or notice upon the part of the bank need not be considered for the reason we are satisfied that the record sustains appellee's contention that Miss Bilharz did not personally collect from the

bank the proceeds of the certificates, but rather the bank made itself the beneficiary, and received all the benefit from the cancellation of the two certificates. This is because all of the affirmative evidence points to the conclusion that the bank itself canceled the certificates and made the records mentioned as a part of a desperate scheme and effort on its part to tide over its financial difficulties. It will be noted that all that has been related subsequent to the morning of June 30, 1931, were transactions not of the individual Miss Bilharz but of the bank as a bank as revealed by its banking records. Impressively suggestive that the bank was deliberately attempting to benefit by wiping out appellee's deposits is the fact that on July 24, 1931, the bank delivered to appellee a statement of the condition of his checking account between the dates of May 15, 1931 and July 24, 1931, but in so doing, by omission from said statement, the bank concealed the fact of the deposit of $10,894.48 on July 17, 1931, and concealed the fact of the two unwarranted charges against his account on July 17, and July 18, exhausting the deposit. In other respects the statement was correct. There is also evidence of the examiner in charge of this bank, acting as a representative of appellant, that the records of the bank show that for several years the bank had been following the same practice with reference to certificates of deposit of other customers, by acquiring the certificate, carrying it as cash, and periodically eliminating the liability of the bank by taking the deposit off the books. This was done by the bank to meet accumulation of bank liabilities, cash items, overdrafts and advancements to pay interest and taxes. This witness further testified:

"Q. Now in each of these other certificates of deposit (certificates other than those of claimant) these other deposits which were placed on the books at that time, did all of those represent actual deposits that had been made? A. Yes.

"Q. And the way which this $18,000.00 certificate of deposit differed from all these that had been allowed as I take it is that this did not represent a deposit? A. As far as the bookkeeping is concerned they are similar, that is, this $18,000.00 was taken from the bank, in the merging of these two exhibits here, 2 and 3, in the bank's records they were replaced by issuing a $18,000 certificate on the 30th day of January, 1933."

While the records of the bank do not reveal as definitely the

manner of manipulation of the $6,966.72 certificate as is shown with reference to the one for $11,024, nevertheless the record as a whole leads to the conclusion that the cancellation of both certificates was accomplished by the bank for its own benefit. There is no affirmative evidence that any part of either certificate was received by Miss Bilharz or by any other person. Appellant points out that on the day of the cancellation of the $6,966.72 certificate there was a substantial diminution of the cash on hand. From such showing, without more, arises the question, What withdrawals caused the drop, that is, was it the payment of the certificate in question or were there other depositors on that day withdrawing their funds? The evidence leaves the answer largely to conjecture. On the other hand it is in evidence that in the cancellation of the $11,024 certificate on July 17, 1931, the bank, in a measure at least, recognized the two certificates as one subject matter, and took into account and recognized the transaction with respect to the two certificates on the morning of June 30, 1931, this being apparent from the fact that in cancelling the $11,024 certificate, the bank itself took credit for the $350 which had been paid upon the two certificates, and which was an integral part of that morning affair of June 30, 1931. There is the further evidence that it was the practice of this bank by manipulation of the records to wipe out deposit liabilities, and the evidence of the examiner in charge that exhibits "2" and "3" were among those deposits "played with". There is the further evidence of the examiner in charge which we have set out above by question and answer. There is also the fact that the bank while still functioning as a bank admitted and recognized its liability for the still existing deposits of appellee by executing the $18,000 certificate. There is sufficient in the record to conclude that the new certificate was intended as a mere continuation of the deposit and it was within the powers of the bank to issue same as evidence of appellee's existing deposit which had previously been placed in the hands of the bank. Murray v. First Tr. & Sav. Bank, 201 Iowa 1325, 207 N. W. 781.

We find nothing in the record leading us to disagree with the conclusion of the district court.—Affirmed.

DONEGAN, C. J., and PARSONS, HAMILTON, MITCHELL, STIGER, ALBERT, ANDERSON, and KINTZINGER, JJ., concur.