# UNITED STATES *v.* MacMILLAN ET AL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 167.   Submitted January 23, 1920.—Decided June 1, 1920.

The exceptional legislation under which the salary of the clerk of the District Court for the Northern District of Illinois was for a time appropriated for by Congress, leaving, however, the expenses of his office to be defrayed as in other cases out of the fees and emoluments did not operate to convert such fees and emoluments when collected into public moneys of the United States.   P. 201.

Moneys received by a clerk of a District Court as interest upon average daily balances of bank deposits made up of fees and emoluments earned by the clerk, or made of moneys deposited with him by litigants to meet future costs, etc., under rule of court, are not public moneys of the United States, nor emoluments for which he must account to the Government.   Pp. 201 *et seq.,* 204.

251 Fed. Rep. 55, affirmed.

THE case is stated in the opinion.

*The Solicitor General* and *Mr. A. F. Myers* for the United States:

The clerk of the District Court for the Northern District of Illinois during the period involved was a salaried officer, expressly prohibited from receiving any additional pay, allowance, or compensation. Act of July 31, 1894, 28 Stat. 204. As such he was clearly subject to the provisions of Rev. Stats., § 1765. *Hoyt* v. *United States,* 10 How. 108; *Lewis* v. *United States,* 244 U. S. 134; *United States* v. *King,* 147 U. S. 676.

The moneys included in defendant's semi-annual returns, on which interest was collected and retained, were received in his official capacity. He thereupon became obligated to account for all such fees and emoluments over and above the necessary expenses of his office. The interest followed the principal, of which the United States was the sole owner, after deduction of the necessary expenses. *United States* v. *McMillan,* 165 U. S. 504; *United States* v. *Abeel,* 174 Fed. Rep. 12; *United States* v. *Mason,* 211 Fed. Rep. 233; 219 Fed. Rep. 547; *Alexander* v. *United States,* 43 Ct. Clms. 389, 395. The ground of decision in *United States* v. *Hill,* 120 U. S. 169, was that since various clerks, with the acquiescence of the judges and of the executive branch of the government, had uniformly omitted from their returns fees received in naturalization cases, such long standing practice amounted to a contemporaneous construction of the statute requiring such returns. The statute was amended by expressly providing that the word "emolument" shall include such fees. Act of June 28, 1902, 32 Stat. 475. In *United States* v. *Mason,* 218 U. S. 517, the court was careful to observe (p. 530) that the case was not one where a clerk has refused or failed to make the return required by statute or to pay over the surplus shown by his return

to exist. While there is no federal decision holding interest on the principal to be an emolument, the term would seem to be broad enough to include it, particularly in view of the statutory definition in the Act of 1902, *supra.* The opinion of the Comptroller (23 Comp. Dec. 732) cited by the court below, was based upon the opinion of the District Court in the present case, and is not an independent opinion. In *Vansant* v. *State*, 96 Maryland, 110, it was expressly held that a clerk should account for interest on moneys deposited by him as emoluments. To like effect are: *Hughes* v. *People*, 82 Illinois, 78; *Hunt* v. *State*, 124 Indiana, 306; *Rhea* v. *Brewster*, 130 Iowa, 729.

The United States, as obligee of the clerk's bond, may maintain a suit against the clerk and his surety for failure to account for interest collected and retained on moneys deposited by litigants subject to disbursement. The moneys continued to be the property of the litigants in the possession of the clerk until they were used for the payment of court costs, or were subsequently returned. If these deposits remain unclaimed by the persons entitled thereto for five years they become subject to an order of court to cause them to be deposited in the Treasury of the United States. Rev. Stats., §§ 995, 996, as amended; *In re Moneys*, 170 Fed. Rep. 470; *United States* v. *Abeel*, 174 U. S. 12. It is immaterial that the interest accruing on these funds does not belong to the United States. The requirement of the statute is not simply that clerks shall account for all moneys belonging to the Government, but that they shall also account for "all other amounts received for services in any way connected with the clerk's office," Act of 1902, *supra*, and ' for any other moneys received by them in their official capacity, whether on behalf of the United States or otherwise." Act of June 30, 1906, 34 Stat. 754. This is not a suit to establish, as between the depositors and the United States, the ownership of the interest, but a suit on the

official bond of the clerk which requires him to account for all moneys coming into his hands as required by law. It is therefore sufficient to allege that the interest is and was no part of any sum earned by the clerk. *Cf. United States* v. *Davis*, 243 U. S. 570. Since the clerk was not the owner of the interest, *Rhea* v. *Brewster*, 130 Iowa, 729, and since it came into his hands in his official capacity, the United States could maintain this suit, *Howard* v. *United States*, 184 U. S. 676; *United States* v. *Abeel*, 174 Fed. Rep. 12; without mentioning the beneficiaries. *Mobile & Montgomery R. R. Co.* v. *Jurey*, 111 U. S. 584, 593; *Webb* v. *Southern Ry. Co.*, 235 Fed. Rep. 578, 585; *Southern Ry. Co.* v. *Blunt*, 165 Fed. Rep. 258, 261; *Long* v. *Kansas City &c. Ry. Co.*, 170 Alabama, 635, 642.

As to the District Court's suggestion that the clerk as insurer of private funds deposited with him is entitled to retain the interest as compensation, see *Rhea* v. *Brewster*, *supra;* *State* v. *McFetridge*, 84 Wisconsin, 473; *Eshelby* v. *Board of Education*, 66 Ohio St. 71; *Garley* v. *People*, 28 Colorado, 227; *Nash* v. *Faulkner*, 107 N. Y. 477.

*Mr. George T. Buckingham, Mr. Marquis Eaton* and *Mr. Charles Troup* for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The relation of the United States to moneys alleged to have been collected by a clerk of a district court of the United States as fees or emoluments of his office and the scope of his duty to account semi-annually for the same to the Attorney General so as to fix, if any there was, the surplus due to the United States after paying the expenses of the clerk's office and the clerk's salary as fixed by law, is the general subject here arising for consideration. § 833, Rev. Stats.; Act of June 28, 1902, 32 Stat. 475, 476; § 839, Rev. Stats.; § 844, Rev. Stats.

The controversy originated by a suit commenced by the United States against the defendant in error as clerk of the District Court of the United States for the Northern District of Illinois, Eastern Division, and the surety on his official bond to recover $3,861.05. The right to the relief was based upon averments that during the period from December 27, 1905, to January 27, 1910, the clerk had collected the sum named as interest on the average daily balances of his bank accounts resulting from the deposit by him of the fees and emoluments of his office and of moneys placed by litigants with him to meet payments for costs or otherwise which they might lawfully be required to make during the course of the litigation.

It was further alleged that although the interest thus received constituted a fee or emolument of the office of the clerk, or money held in trust by him for the United States, for the receipt of which he was bound by law semi-annually to account, he had failed to do so and was therefore liable.

By plea the defendants admitted the collection by the clerk of the amount sued for as interest on the average daily balances of his bank accounts made up as alleged of moneys derived from fees and emoluments and deposits by litigants under the rules or orders of court. The plea averred that, as required by law, the clerk had made his semi-annual accountings in which, although he did not charge himself with the interest allowed him on his bank balances as stated, he had charged himself with every item constituting a fee or emolument of his office from whatever source due, and after debiting the charge thus made with the proper proportion of his salary and the expenses of his office, had turned the balance, if any there was, into the Treasury of the United States. There was annexed to the plea a copy of the rules of court relating to the placing by litigants of money with the clerk, and the plea alleged that whenever, out of such money, any

charge whether for a fee or emolument or otherwise be-
came due, it was at once paid, so that the amount of that
deposit always solely represented money belonging to and
held for the account of the depositing litigant to meet
payments due by him which might thereafter arise.

To this plea the United States demurred as stating no
defense and, after hearing, its demurrer was overruled.
In consequence of an election by the United States to
plead no further, the case was submitted for judgment
on the petition and plea.

At that time the court had under advisement eight
other cases involving the questions arising in this, five
being suits by the United States against the clerks of
other United States courts and three, in addition to this,
being against the clerk who is defendant here, covering
interest collected for different periods. The court dis-
posed of the nine cases in one opinion. It held that as
there was no contention as to a default by the clerk con-
cerning any money deposited with him by litigants, that
subject would be put out of view. Carefully considering
the pleadings, it held that the claim of the United States
to the interest rested upon one or the other of two prop-
ositions: (1) that the money deposited by the clerk and
upon which the interest was allowed was public moneys
of the United States and therefore the interest belonged
to the United States; (2) that without reference to whether
the deposits were public moneys, the interest paid was
an emolument for which the clerk was bound to account.
Elaborately considering these questions the court de-
cided both against the United States.

Reviewing on error one of the cases against this de-
fendant which was decided, as we have seen, by the trial
court along with this, the Circuit Court of Appeals affirmed
the trial court in a brief *per curiam* opinion in which it
approved the analysis of the case as made by the trial
court and concurred in holding decisive the cases in this

court which the trial court relied upon. Subsequently when the case now before us came to be heard the ruling in the case just stated was applied to this and the judgment was therefore also affirmed.

In argument here it is suggested by the United States that as the defendant clerk was by exceptional legislation an officer whose salary was specifically appropriated for (Acts of July 31, 1894, 28 Stat. 162, 204; March 2, 1895, 28 Stat. 764, 806; August 24, 1912, 37 Stat. 417, 465), therefore the principles passed upon below are not necessarily decisive. But aside from the disregard of the admissions resulting from the pleadings which the suggestion involves and the entire absence of even an; intimation that such a contention was raised in either of the courts below, we put the belated suggestion out of view, since as it is not disputed that the defendant clerk was under obligation to meet the expenses of L ~office from the fees and emoluments thereof and to pay over to the United States only the surplus resulting, we think the distinction assumed to arise from the proposition stated makes no difference in the application of the principles which the court below held to be conclusive and the soundness of which we are now therefore required to pass upon.

As we agree with the lower court that the two propositions decided by the trial court embraced the whole case, we are thus brought, first, to determine whether the fees and emoluments collected by the clerk and deposited by him in bank and upon which interest was allowed him were public moneys of the United States, thus entitling the United States to the interest as an increment of its ownership. That it was not is so completely foreclosed as to cause it to be only necessary to consider the previous ruling on the subject.

In *United States* v. *Mason*, 218 U. S. 517, the court was called upon to determine the validity of the action of a

circuit court of the United States in quashing three indictments against the clerk of a circuit court of the United States for the "embezzlement of certain moneys of the United States," which moneys were a portion of the surplus of fees and emoluments of his office over and above the compensation and allowances authorized by law to be retained by him. The indictments were based, and the sole reliance to sustain them and thus reverse the court below was rested, upon §§ 5490 and 5497, Revised Statutes, with the amendments made by the Act of February 3, 1879, c. 42, 20 Stat. 280, each of which sections exclusively dealt with embezzlement of "public moneys." Whether, therefore, the particular moneys which were there in question, being derived from fees and emoluments of the clerk, were public moneys required necessarily to be decided. Reviewing historically the legislation covering clerks of courts of the United States which had been previously recapitulated in United States v. Hill, 120 U. S. 169, it was pointed out, first, that originally clerks of courts were not salaried, but were remunerated by the right to collect and retain established fees and emoluments and that under such legislation the sums collected by the clerks were in no sense public moneys of the United States, but were moneys of the clerks held by them in their personal capacity in payment for their official services.

Coming to state the evolution in the situation by which in time it came to pass that a limit was placed on the amount of compensation which a clerk should annually receive and consequently making it his duty to account for his fees and emoluments and to turn over to the United States the surplus, if any, remaining after the payment of his compensation and the expenses of his office, the court observed (pp. 523–4):

"The plain object of this statute was to limit the amount which the clerk was to retain and to require an accounting, an audit of expenses, and a payment of the surplus. Other-

wise the established method of administering the office was not changed. The fees were to be recovered as theretofore; and to the extent of the amount of the fixed compensation of the clerk and the necessary expenses of his office, he was entitled to use and to pay as formerly. The statute suggests no other course. What, if anything, should be paid into the public treasury at the end of the half year, when he was to make his return, depended upon the amount of the fees, the amount of the expenses and the result of the audit. If his fixed compensation and his necessary expenses exhausted the fees there would be nothing to pay. The amount payable was to be determined when the return was made."

Testing the possible application of the statutes dealing with the embezzlement of public moneys to the rights and duties of a clerk to collect the fees and emoluments of his office and to make use of them as authorized by law, it was pointed out that such application could not be made because of the incompatibility between the powers and duties of the clerk, on the one hand, and the provisions of the statutes relied upon, on the other. This incongruity was aptly illustrated by the statement which follows dealing with the duties of the clerk and the impossibility of applying to them the prohibitions of one of the statutes in question (p. 525):

"They lay outside of the prohibition of § 16 against loaning, using, converting to his own use, depositing in banks, and exchanging for other funds, for it was upon these fees that the clerk depended for his livelihood and for the payment of the expenses of his office, subject only to the duty twice a year to make his accounting and to pay over the surplus if the fees exceeded the total amount allowed him."

Again marking the broad line which lay between public money and the clerk's fees and emoluments and his right to collect and disburse the same, the court declared (p. 529):

"There has thus been established a distinct system with

respect to the fees and emoluments of the clerks. Its features are to be explained by the history of the clerk's office and the requirements of its convenient administration. It is urged that the fees and emoluments are attached to the office, and are received in an official capacity. This consideration, however, does not aid the prosecution, for they were attached to the office before the statute of 1841, when they belonged to the clerk without any duty on his part to account for any portion of them."

And once more emphasizing the distinction it was said (p. 531): .

"The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed to him for his compensation and office expenses under the statutes defining his rights and duties, and with respect to the amount payable when the return is made the clerk is not trustee but debtor. Any other view must ignore not only the practical construction which the statutes governing the office have received, but their clear intent."

Indeed the decisive principles which were thus announced in the *Mason Case* were but a reiteration and application of the general doctrine on the subject announced in *United States* v. *Hill*, 123 U. S. 681, where it was in express terms pointed out that "The clerk of a court of the United States collects his taxable 'compensation,' not as the revenue of the United States, but as fees and emoluments of his office, with an obligation on his part to account to the United States for all he gets over a certain sum which is fixed by law."

Conclusively disposing as these cases do of the contention of the Government as to public moneys of the United States, it leaves only for consideration the question of whether the interest on the sum of the fees and emoluments deposited by the clerk in bank was in and of itself an emolument for which he was liable to account. But that

question is virtually also foreclosed in view of what was held in the *Mason Case*, since the individual character of the bank deposit as there defined and the right to make it necessarily causes the increment of such deposit, that is, the interest, to partake of the character of the principal. And besides, aside from the ruling in the *Mason Case*, it had been previously held that a sum collected by a clerk for a service not pertaining to his office or provided for in the schedule of fees allowed him for official services was not a fee or emolument in the sense of the statute (*United States* v. *Hill*, 120 U. S. 169).

Although at the outset we eliminated from consideration liability for interest on money of litigants deposited with the clerk under the rules of court because not embraced in the claim of money or property of the United States upon which all the Government contentions here rest, in leaving the case we observe that the question of the liability of the clerk to pay interest to litigants on money deposited by them is in a large degree covered by the rules of court annexed to the plea, which permit in the cases specified an application of a litigant to the court to direct the allowance of such interest and to provide for its payment by the clerk when the request is granted.

In conclusion we direct attention, as was done in the *Mason Case* and as did the trial court in this case, to the incompatibility which would result, on the one hand, from enforcing an absolute obligation on the part of the clerk to account for all the fees and emoluments of the clerk's office whether collected or not as well as his duty to defray the expenses of his office out of such revenue, and the upholding, on the other hand, of the conflicting theory that the fees and emoluments were public moneys and the power of the clerk to deal with them accordingly limited.

*Affirmed.*

MR. JUSTICE PITNEY and MR. JUSTICE CLARKE dissent.