**COOK, Treasurer of Williamsburg County, S. C., v. ELLIOTT et al.**

**KRUPNICK v. PEOPLE'S STATE BANK OF SOUTH CAROLINA et al.**

**No. 3675.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 19, 1934.

NORTHCOTT, Circuit Judge, dissenting.

---

M. A. Shuler, of Kingstree, S. C., and G. L. B. Rivers, of Charleston, S. C. (Hagood, Rivers & Young, of Charleston, S. C., and M. L. Meadors and Lee & Shuler, all of Kingstree, S. C., on the brief), for appellant.

William M. Shand and E. W. Mullins, both of Columbia, S. C. (Benet, Shand & McGowan and Nelson & Mullins, all of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

J. Wesley Cook, treasurer of Williamsburg county, S. C., petitioned the District Court to require the receivers of the insolvent People's State Bank of South Carolina to set aside securities of the value of $58,-909.95 in their hands for the protection and benefit of the county as a depositor in the bank; but the District Court, being of the opinion that the county was not entitled to the preferential payment which such action would involve, dismissed the petition, and this appeal ensued.

Section 1 of an Act of the General Assembly of South Carolina of April 4, 1925, 34 St. at Large, p. 238 (South Carolina Code of 1932, § 2827, subd. 1), directed ·that all public funds of the county should be deposited in banks within the county:

"Provided, That the banks receiving such fund or funds for deposit shall execute a bond, either personal or indemnity, or pledge sufficient collateral as security conditioned to pay the County of Williamsburg any sum or sums, together with interest, loss or damage, that may be suffered by the County of Williamsburg by reason of the failure of said banks or banking institutions, or refusal of said banks or banking institutions to keep the said funds safely and pay the same with any accrued interest; such security either in a personal or indemnity bond or collateral

shall be approved by the County Commissioners and the County Attorney of said County, and County Supervisor."

"Section 3. *Security for Present Deposits.*—The County Treasurer of Williamsburg County and any other officer of said County who have any funds now on hand are hereby required to, immediately upon the passage of this Act, obtain proper security for such funds now on deposit, as well as any funds hereafter to be deposited, and if any bank or banks in which there are now deposited any of the County funds of Williamsburg County shall fail or refuse to give security as required in this Act, such funds shall be immediately withdrawn from such bank and placed in some other bank or banks who will provide security as now required." (See Code 1932, § 2827, subd. 3.)

"Section 4. *Penalty for Violation by Officer.*—Any public officer of the County of Williamsburg who shall fail, refuse or neglect to comply with the terms and provisions of this Act shall be deemed guilty of misconduct in office and it shall be the duty of the Governor, upon the facts being made known to him, to remove said officer or officers summarily from office." (See Code 1932, § 2827, subd. 4.)

On April 6, 1931, the People's State Bank and the county treasurer entered into an agreement which recited, on the one hand, the deposit in the bank by the county treasurer of county funds not in excess of $200,000, and his intention to make additional deposits from time to time, subject to check; and, on the other hand, the purpose of the bank to secure all of the deposits as required by the South Carolina statute mentioned above. To this end it was stipulated that the bank had deposited with its trust department certain United States, Federal Land Bank, state, county, school district, and municipal bonds and notes, of the par value of $200,000, listed on an attached schedule, and it was agreed that these securities should be held in trust as security for the prompt payment, on demand, of all county funds then or thereafter deposited; and that, upon proof of the failure of the bank to promptly pay any of said sums upon demand, then to sell the bonds at their market value, and from the proceeds to pay to the county treasurer the amount of its deposits. The bank also agreed, upon notice from the county treasurer that deposits would, within twenty-four hours, exceed the sum of $200,000, to deposit forthwith additional security of like character in a principal sum equal in amount to the anticipated deposits, to be held in trust on the same terms and conditions. The right was reserved to the bank upon certain conditions to withdraw any securities in excess of the amount of the deposits, and at any time to withdraw securities upon the substitution of other securities of like character and value.

Pursuant to the agreement, the county treasurer did deposit county funds in the bank from time to time, and had on deposit when the bank closed its doors on January 2, 1932, the sum of $189,909.95, against which its trust department held securities of the par value of $131,000. The difference of $58,909.95 was due to the withdrawal of securities by the bank, in accordance with the agreement, and the failure of the bank, contrary to the agreement, to deposit securities with the trust department upon the receipt of certain county funds, especially during the week immediately preceding the failure of the bank when substantial amounts were deposited. For this difference the petitioner claims that the receiver should set apart additional security to be applied in accordance with the terms of the trust, or, in other words, that he is entitled to preferential payment out of the assets of the bank.

We think that this claim should have been recognized by the District Court under the facts recited, if the deposits in fact augmented the assets coming into the hands of the receivers. Considering the terms of the act, whereby banks receiving county funds were required to deposit sufficient collateral, approved by certain county officials, to insure prompt repayment of the deposits on demand, and county officers, on pain of removal from office, were required immediately upon the passage of the act to obtain proper security for county funds then on deposit, or, failing such security, immediately to withdraw the funds from the bank, it seems obvious that no deposit of county funds could be lawfully made or accepted without a simultaneous deposit of collateral security by the bank. Consequently, under the established rule, the bank acquired no title to the deposits which it received contrary to the provisions of the statute, and, as to these funds, the relationship of debtor and creditor between the bank and the county did not exist. The actions of the parties, on the contrary, gave rise to a constructive trust; and the bank was bound to hold the funds so deposited for the benefit of the county, separate and apart from its own assets. Board of Commissioners of Crawford County, Ohio v. Strawn (C. C. A.) 157 F. 49, 15 L. R.

A. (N. S.) 1100; Tucker v. Newcomb (C. C. A.) 67 F.(2d) 177; Fiman v. State of South Dakota (C. C. A.) 29 F.(2d) 776.

The District Judge felt constrained to follow the decision of Hancock County v. Hancock Nat. Bank of Sparta, Ga. (C. C. A.) 67 F.(2d) 421 [to which we referred in passing in Lamb v. Townshend, 71 F.(2d) 590], wherein it was held that a somewhat similar Georgia statute, regulating the giving of bonds of banks to secure county deposits, did not make the right to receive deposits conditional upon the prior giving of a bond, and hence a bank which accepted a deposit of county funds without giving sufficient bond, acquired title to the funds and did not become a trustee ex maleficio. But the provisions of the South Carolina statute now under consideration are so definite and precise that we are unable to place a similar interpretation upon them.

Having reached the conclusion in the pending case that a trust relationship was not established between the bank and the county, the District Judge did not find it necessary to determine whether the evidence showed the other essentials of a right to preferential payment, to wit, a tracing of the county funds into the hands of the receivers, and an augmentation thereby of the assets which they received. Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 82 A. L. R. 1; Harmer v. Rendleman (C. C. A.) 64 F.(2d) 422. The record does not contain sufficient data to enable a decision upon this point to be made, but it is conceded that if, as we have found, a trust relationship was established, an opportunity should be afforded the county to show the facts in this respect. If a tracing of the trust moneys and an augmentation of the assets in the hands of the receivers are proved, the county will be entitled to a preferential payment on account of its deposits against which no collateral was given.

The order of the District Court is therefore reversed, and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

NORTHCOTT, Circuit Judge (dissenting).

I cannot concur in the above opinion because I have reached the conclusion that, when the deposit was made by the treasurer of Williamsburg county in the branch bank, it was a lawful deposit. Such a deposit created the relationship of debtor and creditor, and, while it was the duty of the bank to transfer to its trust department sufficient security to cover the deposit, the fact that the duty was not performed by the bank did not affect the relation that existed, that of debtor and creditor.

The deposit was made in a branch bank, and the presumption is that the security to secure it would have to be given by the bank at its principal place of business, and the fact that the bank failed before this was done, in due course, does not create a trust enforceable against the funds in the hands of the receivers. It is evident that the giving of the security would, of necessity, follow the deposit, and that this could not be done before the deposit.

There were no circumstances surrounding the deposit that would create a trust ex maleficio.