## WEVER v. DAKIN et al.
### No. 7844.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1936.

J. Carl Lambdin, of St. Petersburg, Fla., for appellants.

B. T. Sauls, of St. Petersburg, Fla., for appellees.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellant Mrs. Bessie Wever, hereafter called plaintiff, filed a bill in equity against appellee L. M. Dakin, hereafter

referred to as defendant, as receiver of the First National Bank of St. Petersburg, Fla., and the Central National Bank & Trust Company of St. Petersburg, Fla., to set aside certain transactions had with his predecessor, A. M. Anderson, as receiver of both banks, in which Anderson had applied certain dividends to the liquidation of notes of which plaintiff was a joint maker with her husband and for an accounting as to said dividends. The bill is lengthy, but the material allegations may be somewhat briefly stated.

The bill alleges substantially as follows: On May 4, 1930, appellant signed a joint and several note with her husband, E. Wever, to the order of the First National Bank, in the sum of $500, due sixty days thereafter. On this note, John I. Viney was an accommodation indorser. On April 15, 1931, she executed a joint and several note to the order of the Central National Bank & Trust Company in the sum of $170, due in sixty days. On this note M. D. Wever was an accommodation indorser. The proceeds of the $500 note were used partly to pay taxes on property owned by plaintiff and her husband, the balance and all the proceeds of the $170 note went to pay debts of the husband.

The First National Bank closed its doors June 10, 1930, and A. M. Anderson was appointed receiver. In April, 1931, the Central National Bank suspended and Anderson was also appointed receiver of that bank. At the time these banks closed plaintiff had savings deposits in her own name in the First National Bank of $3,142.50 and in the Central National Bank of $60.14, which were her separate property. She filed claims as a creditor of the banks and received certificates from Anderson acknowledging her claims in the above amounts. She requested Anderson to set off the notes against her deposits and he declined to do so.

In December, 1930, the First National Bank declared a dividend of 15 per cent., of which the amount due her was $471.38. Accompanied by her husband, she went to the office of Anderson, receiver, and requested payment of the said dividend. Anderson declined and stated that the amount of the dividend check would have to be applied on the $500 note and over her protest by threats compelled her to indorse the check to him, giving her a receipt for the amount of $471.38. On March 19, 1931, a further dividend of 10 per cent. was declared by the First National Bank. Of this she had due her the sum of $314.25. She again requested payment to her of this dividend check. Anderson refused to deliver same to her and over her protest by threats compelled her to indorse the check, pay the balance on the note for $500, and pay the note of $170 held by the Central National Bank. After that she employed legal counsel to take up the matter of the allowances of the set-off and the proper accounting for the said dividends. Thereafter the First National Bank declared a third dividend, of 8 per cent., which would entitle her to approximately $251.50. She requested Anderson to turn this dividend over to her, but was informed by him that until she took the matter out of the hands of her attorneys, he would not pay the dividend to her, would see that the dividend was never paid, and would return the check to the comptroller's office in Washington, stated that her attorneys were crooked and should be disbarred for advising her that she had any rights or remedy in the matter.

Plaintiff is seventy-five years of age and her husband is over seventy. Neither had any education and were in ignorance of their rights in the matter. Anderson abused them and told them in the first two instances that unless they agreed to apply the dividends on the payments of the notes she would never receive any dividends at all; that she believed from what he said that he had the power of the federal government behind him and could deprive her of her dividends and put her to great trouble and expense to assert her rights; that she and her husband were in destitute circumstances; that her husband and the accommodation indorsers of the notes were insolvent; and that she was compelled by the coercion of Anderson to agree to the application of the dividend checks to the payment of the notes. The bill alleges in considerable detail the acts and statements of Anderson alleged to be coercive and that the banks are still in process of liquidation. The bill prayed that the notes be set off against her deposits and that she have an accounting from defendant, as the successor of Anderson, for her dividends.

A motion to dismiss the entire bill on the grounds of want of equity and laches was overruled and defendant was allowed twenty days to answer. Subsequently this order was amended to allow defendant twenty days to plead over. Defendant filed an an-

swer to the eighth paragraph of the bill, which alleged the transaction as to the third dividend of 8 per cent. The answer denied the allegations as to coercion, but admitted possession of the dividend check, which was tendered. In addition, defendant filed a motion to strike and dismiss all the other material allegations of the bill, except the jurisdictional averments.

Notice was then given by mail to plaintiff's attorneys that the case would be taken up for a hearing on February 20, 1935. It was taken up on that day, in the absence of plaintiff and her attorneys, and a decree was entered, striking and dismissing all parts of the bill objected to, but giving plaintiff judgment for the third dividend check. This appeal followed.

As the District Court did not render an opinion, made no findings of facts, and did not file any conclusions of law, we do not know his reasons for judgment and must consider the case as presented by the record, without that valuable aid.

 As receiver, it was Anderson's duty to protect plaintiff in her rights. Under the law of Florida, he could not have maintained an action at law against her on the notes. Hodges v. Price, 18 Fla. 342. This is not disputed by defendant. It is doubtful that plaintiff could have been compelled to set off her deposits against the notes, but we need not go into that as she has offered to do so. In any event, the dividend checks could not be lawfully appropriated by the receiver to the payment of the notes, especially the note due the Central National Bank. Taking the allegations of the bill as true, it is plain that Anderson was guilty of fraud whether he coerced or merely persuaded plaintiff to indorse the dividend checks over to him. The banks are still in liquidation. There has been only one receivership for each bank and in effect only one receiver, notwithstanding two individuals have occupied the office. Defendant, as the successor of Anderson, could well be required to account in his official capacity for the misappropriated money. The bill must be considered as a whole and states a good cause of action to set aside the transactions complained of and for an accounting.

 Laches is an equitable defense, not depending merely on the lapse of time, but also on other factors that would make a recovery by the plaintiff inequitable, such as, generally speaking, the death of witnesses, the loss of other evidence, or the changed situation of the parties. Each case depends upon its own peculiar circumstances. Stearns v. Page, 7 How. 819, 12 L.Ed. 928; Michoud v. Girod, 4 How. 503, 561, 11 L.Ed. 1076. The suit was timely filed, well within the statute of limitations. Laches does not appear upon the face of the bill. If the action of plaintiff in indorsing over the dividend checks has changed the position of other creditors or defendant and created an estoppel, laches may again be pleaded as a defense.

The bill is drafted in substantial compliance with the provisions of Equity Rule 25 (28 U.S.C.A. following section 723) and the causes of action are properly joined under the provisions of Equity Rule 26 (28 U.S.C.A. following section 723). Under the prayer for general relief, the court may do equity between the parties.

The judgment appealed from is reversed and the cause remanded, with instructions to overrule the motions to dismiss and the motion to strike parts of the bill and to reinstate the bill in its entirety, and for other and further proceedings not inconsistent with this opinion.

Reversed and remanded.