LEONARD et al. v. GAGE et al.*

KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.

No. 4219.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

*Writ of certiorari denied 58 S.Ct. 752, 82 L.Ed. —.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

Donald Russell, of Spartanburg, S. C. (R. Beverley Sloan, of Columbia, S. C., and C. W. McTeer, of Chester, S. C., on the brief), for appellants.

Christie Benet and E. W. Mullins, both of Columbia, S. C. (Benet, Shand & Mc-Gowan, W. M. Shand, and Nelson, Mullins & Grier, all of Columbia, S. C., on the brief), for appellees.

PARKER, Circuit Judge.

This is an appeal in three consolidated causes in which the receivers of insolvent national banks are seeking to recover from the receivers of the insolvent Peoples State Bank of South Carolina the proceeds of bonds and other securities pledged by the national banks to secure deposits made with them by the receivers of the state bank. The facts are that the receivers appointed by the court below for the state bank deposited funds during the year 1932 in each of the national banks under an order of court directing that the receivers in making the deposits should require security within certain specified classes. Securities of the classes specified were pledged by each of the national banks, and, at the time of their respective closings in 1933, were held by the receivers of the state bank as security for the deposits. Shortly after the failure of the national banks the pledged securities were sold by the state bank receivers with the consent of the national bank receivers and the Comptroller of the Currency; and the proceeds of the sales were applied in liquidation of the deposit accounts, a small excess in the case of one of the banks being returned to its receiver.

Between July 25 and October 21, 1935, three proceedings were instituted in the court below by the several national bank receivers by the filing of petitions wherein they asked that the state bank receivers account to them for the proceeds of the collateral pledged as security for deposit accounts and sold as above set out, less the dividends to which the state bank receivers would be entitled as unsecured creditors on their claims for deposits. These petitions were resisted by the state bank receivers, who contended that the United States, at the time of the failure of the state bank, had a first lien on the assets of that bank to secure a war loan deposit of something like $1,800,000; that their attorneys had called the attention of the Comptroller of the Currency to this fact in October, 1932, and asked a ruling from him as to whether the receivers of a closed national bank would contest a pledge of assets as security for deposits made by them in these circumstances; and that, in response to this inquiry, their attorneys received a letter from the Deputy Comptroller of the Currency in which he stated that, while he was of the opinion that a federal court receiver was not in that capacity alone entitled to obtain collateral security for his deposits with a national bank, he believed that as a matter of policy the power of national banks to secure deposits under the circumstances should not be questioned, and that the Comptroller's office would "not disapprove this particular pledge." The state bank receivers relied also upon the fact, already adverted to, that the collateral pledged had been sold and the deposit accounts had been liquidated with the approval of the receivers of the national banks and of the Comptroller of the Currency. A further ground of defense was the delay on the part of the national bank receivers in instituting proceedings for the recovery of the proceeds of the collateral.

In connection with these defenses, it appears that the claim of the United States was paid off in full by the receivers in 1933, and that, notwithstanding the delay in the filing of claims and institution of proceedings in behalf of the national bank receivers, there are ample funds in the hands of the state bank receivers for their payment without disturbance of the orderly administration of the receivership. This delay is explained in the testimony as having been due to the pressure of work in the office of the Comptroller of the Currency; and there is no showing that it has resulted to the disadvantage of any one.

The learned judge below held that the deposits by the state bank receivers

were not deposits of public moneys, that the national bank receivers were not estopped from claiming the proceeds of the collateral sold by any of the circumstances relied on, and that the prosecution of their claims was not barred by laches. He denied their petitions, however, on the ground that the deposits constituted constructive trusts "based on special circumstances of misconduct," grounding this conclusion on the fact that the national banks through their proper officers had knowledge of the contents of the order requiring the state bank receivers to obtain security for the deposits. He gave considerable weight, apparently, to the fact appearing in evidence that funds of the bank to the amount of the deposits were used to purchase the securities pledged. The receivers of the national banks have appealed from this decree; and the state bank receivers ask affirmance, not only for the reasons given in the opinion of the court below, but also on the grounds of laches and estoppel there urged. Three questions, therefore, are presented by the appeal: (1) Whether the pledges relied on by the state bank receivers were valid; (2) whether the national bank receivers are precluded from seeking relief, either by the correspondence had between the Comptroller's office and the state bank receivers, or by acquiescence in the sale of the securities and the application of the proceeds to the liquidation of the deposit accounts; and (3) whether the national bank receivers are barred by laches from seeking the relief prayed. We think that all three questions must be answered in the negative.

It is perfectly clear that, under the doctrine of Texas & Pacific Ry. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, the pledges of securities by the national banks to secure the deposit accounts of the state bank receivers were ultra vires and for that reason invalid. The precise question was before us in Griffin v. Royall, 4 Cir., 70 F.2d 103, wherein we said, referring to the decisions just cited: "Those decisions definitely establish that a national bank is without power to pledge its assets to secure a private deposit and that, except as to certain federal funds covered by specific statutes, it has power to make such pledge to secure deposits of public funds only as allowed by the Act of June 25, 1930, c. 604, 46 Stat. 809 (12 U.S.C.A. § 90) and to the extent permitted by that act. That act provides: 'Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State.' Clearly, the deposit of the receiver of the state bank was not the deposit of 'public money of a State or any political subdivision thereof.' A deposit of the funds of an insolvent bank is a deposit of private funds. See note 11 to opinion in the case of Texas & Pac. R. Co. v. Pottorff [291 U.S. 245], 54 S.Ct. [416, at] page 419, 78 L.Ed. [777]. The pledge in question, then, is condemned by the general rule laid down by the Supreme Court; and it cannot be brought within 'the exception created by the statute of 1930."

■ Circumstances relied on to distinguish the pledges here involved from that under consideration in Griffin v. Royall, supra, fail, in our opinion, to establish any valid ground of distinction. The fact that funds of the United States had been deposited in the failed state bank did not make the moneys in the hands of the state bank receivers public funds of the United States. Cf. United States v. MacMillan, 253 U.S. 195, 40 S.Ct. 540, 64 L.Ed. 857. And there is nothing in the fact that the United States had a lien upon the assets of that bank to secure its claim which would authorize the pledge of securities by the national banks to secure deposits by its receivers; for it is only in the specific cases provided for by federal statutes that pledge of securities to secure deposits is warranted. City of Marion v. Sneeden, supra, 291 U.S. 262, 268, 54 S.Ct. 421, 422, 78 L.Ed. 787; O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, 149, 150. Since, as pointed out in the Pottorff Case, supra, neither the bank nor the receiver can be held estopped to deny the validity of the pledge because of its ultra vires character, it is immaterial that the pledge preceded the deposits or that funds of the bank to the amount of the deposits were used to purchase the securities pledged. See Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83. And it is perfectly clear that the powers of the national banks under the act of Congress creating them could not be enlarged, either by the order of the District Judge specifying the kinds

of security which the receivers might accept for deposits, or by the letter of the Deputy Comptroller of the Currency to the effect that the Comptroller's office would not disapprove pledges which it was beyond the statutory powers of the banks to make. Granzow v. Village of Lyons, supra.

■ And we see nothing in the case to justify a finding that there were any circumstances of misconduct which would give rise to constructive trusts with respect to the deposits. This would be a matter for consideration with respect to the rights of the state bank receivers in the funds in the hands of the receivers of the national banks, not with respect to the rights of the latter in the proceeds of the pledged collateral; but, in no aspect of the case, do we find any circumstances of misconduct or grounds for declaring a constructive trust with respect to the deposits. The deposits were made as authorized upon the security specified in the order authorizing them. The relationship of debtor and creditor was created thereby just as the order contemplated. The security for the deposits failed, not because of the misconduct of any one, but because of lack of power in the bank to pledge the securities which the order of court had authorized the receivers to accept. The failure to obtain the security contemplated unquestionably resulted from a mistake of law, just as in the Pottorff Case; but, under the authority of that decision, such mistake does not give the one who has suffered from it any better status than that of a general creditor.

■ The cases of Tucker v. Newcomb, 4 Cir., 67 F.2d 177, and Cook v. Elliott, 4 Cir., 73 F.2d 916, do not help appellees. In the first of these cases a constructive trust was declared with respect to funds belonging to an infant and deposited in a bank by its mother under circumstances amounting to a breach of legal duty of which the bank had knowledge. In the second, a deposit of county funds was made in a bank without the obtaining of proper security, in violation of a statute which required that such security be obtained as a condition of the deposit. Here there was no improper deposit of funds by the receivers and no failure to obtain the pledge of securities which the order of court required. There is no reason, therefore, for holding that a trust relation arose with respect to the funds deposited instead of the debtor and creditor relation which the parties contemplated. Cf. Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288. The contracts under which the deposits were made, in so far as they created the relationship of debtor and creditor, were perfectly valid. Only the pledge of the securities exceeded the powers of the banks. If the entire contract under which the deposit was made be considered as beyond the bank's powers, it results that the bank is liable for the funds received under an implied contract as for money had and received; but this liability is merely that of a general creditor. Handelsman v. Chicago Fuel Co., D.C., 6 F.2d 163.

■ A constructive trust will ordinarily be declared with respect to a deposit only where there is something in the attendant circumstances which renders it wrong, or contrary to law or good conscience, for the bank to accept the deposit from the depositor and treat the funds deposited as its own and as creating a mere debt on its part. There is manifestly nothing of the kind here. The case is not different from that which would be presented if the security for the deposits had been bonds which had been avoided because of lack of power on the part of the bondsmen to execute them. We see no occasion, therefore, for remanding the cause, as suggested, in order that the question of constructive trust may be investigated.

■■ Coming to the second point, it follows from what we have said that the receivers of the national banks are not precluded from reclaiming the securities pledged, or their proceeds, because of the correspondence had between the state bank receivers and the Comptroller of the Currency. And we think that they are not precluded by the circumstances surrounding the sale of the securities and the application of their proceeds in liquidation of the deposit accounts, all of which occurred prior to the decision in the Pottorff Case and was due to mistake of law on the part of all parties concerned. The funds derived from the sale of the pledged securities were received by officers of the court who hold them for the parties legally entitled to them; and it is well settled that the rule precluding the recovery of voluntary payments does not apply to payments made to an officer of the court under misapprehension of legal rights. As said by Judge Noyes, speaking for the Circuit Court of Appeals of the Second Circuit in

Carpenter v. Southworth, 165 F. 428, 429: "While payments made under a mistake of law are, as a general rule, not recoverable, an exception is made in the case of such payments made to trustees in bankruptcy or other officers of courts. As stated by Lord Justice James in Ex Parte James, L. R. 9 Chancery Appeals, 609, 614: 'With regard to the other point, that the money was voluntarily paid to the trustee under a mistake of law, and not of fact, I think that the principle that money paid under a mistake of law cannot be recovered must not be pressed too far, and there are several cases in which the Court of Chancery has held itself not bound strictly by it. I am of opinion that a trustee in bankruptcy is an officer of the court. He has inquisitorial powers given him by the court, and the court regards him as its officer, and he is to hold money in his hands upon trust for its equitable distribution among the creditors. The court, then, finding that he has in his hands money which in equity belongs to some one else, ought to set an example to the world by paying it to the person really entitled to it. In my opinion the Court of Bankruptcy ought to be as honest as other people.' See, also, Ex Parte Simmonds, L.R. 16 Q.B. 308; Gillig v. Grant, 23 App.Div. 596, 49 N.Y.Supp. 78."

See, also, 48 C.J. 739 and the cases cited in the above quotation.

Furthermore, the receivers of the national banks were administrative officers of the United States. In re Chetwood, 165 U.S. 443, 458, 17 S.Ct. 385, 41 L.Ed. 782; United States v. Weitzel, 246 U.S. 533, 534, 38 S.Ct. 381, 62 L.Ed. 872; Liberty Nat. Bank v. McIntosh, 4 Cir., 16 F.2d 906, 910. The rule is applicable, therefore, that payments voluntarily made by an officer of the United States under a mistake of law may be recovered. Wisconsin Central R. Co. v. United States, 164 U.S. 190, 212, 17 S.Ct. 45, 41 L.Ed. 399. As was well said by the Circuit Court of Appeals of the Seventh Circuit, speaking through Judge Lindley in Granzow v. Village of Lyons, supra, 89 F.2d 83, 85:

"The receiver was the agent and administrative officer of the United States. In re Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782; United States v. Weitzel, 246 U.S. 533, 535, 38 S.Ct. 381, 62 L.Ed. 872. Payments voluntarily made by officers of the United Sates, under a mistake of law, may be recovered. * * * Such

payments are exceptions to the rule that money paid under mistake of law cannot be recovered. A private party may do as he desires with his own money, but an officer of the United States cannot bind his government in making payments contrary to law. Heidt v. United States (C.C.A.) 56 F.2d 559. It follows, therefore, that appellant as receiver had a right to sue and recover what he had illegally paid under a mistake of law.

"But it is said that the preferential payments had been made at the instance and with the approval of the comptroller. This in no wise alters the situation. In Wisconsin Central R. Co. v. United States, supra, the Supreme Court held the Postmaster General included within the class of those whose wrongful payment may be recovered. There is no reason why the comptroller should have any greater power to bind the government by approving a payment contrary to law. Such was the reasoning of the court in O'Connor v. Rhodes, 65 App. D.C. 21, 79 F.2d 146. There the previous payments were recovered, although they had been made at the instance and with the approval of the comptroller. The Supreme Court affirmed in 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733. A similar recovery was allowed in Mays v. Wilkinson (D.C.) 12 F. Supp. 350. There was and there could have been no estoppel as to either the receiver or the comptroller which would work a binding effect upon the payment of money made by them as United States officers under misapprehension of the law."

And we think it clear that the proceeds of the collateral applied in extinguishment of the deposit accounts can be recovered for another reason. To permit the receivers of the failed national bank to thus apply their assets on unsecured claims would be to sanction the violation of the statutes forbidding preferences and requiring the equal and ratable distribution of the assets. See 12 U.S.C.A. §§ 91, 194; Illinois Cent. R. Co. v. Rawlings, 5 Cir., 66 F.2d 146, 149; Adams v. Cribbis, D.C., 17 F.Supp. 723.

And we see nothing in the defense of laches. The claims were filed well within the period of the statute of limitations. Such delay as there was can be justified on the ground that it resulted from the piling up of business in the Comptroller's office due to bank failures and the decision in the Pottorff Case; and no detriment is shown to have resulted to any one

as a result of the delay. Laches cannot ordinarily be asserted against the public officer of the United States seeking to discharge his official duty. United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; Chesapeake & Del. Canal Co. v. United States, 250 U.S. 123, 125, 39 S. Ct. 407, 63 L.Ed. 889. An exception to this rule is recognized, it is true, where the United States is "a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person." United States v. Beebe, 127 U.S. 338, 347, 8 S.Ct. 1083, 1088, 32 L.Ed. 121; United States v. American Bell Telephone Co., 167 U.S. 224, 265, 17 S.Ct. 809, 42 L.Ed. 144. This exception, however, has no application here. The receivers of the national banks are suing to set aside transactions which contravene the statutes forbidding preferences to creditors and requiring equal and ratable distribution of the assets of such banks, 12 U.S.C.A. §§ 91 and 194; and these are matters of interest to the public as well as to the creditors of the banks, and matters over which the government assumes sole power of control through officers of its own selection.

█ But a sufficient reason for holding that the defense of laches has no application is that no disadvantage has resulted to any one from the delay in the filing of claims by the receivers. O'Brien v. Wheelock, 184 U.S. 450, 493, 22 S.Ct. 354, 46 L. Ed. 636; Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738; Schmelz Liquidating Corporation v. Williams, 4 Cir., 86 F.2d 167, 169; Wheeling Bridge & Terminal Co. v. Reymann Brewing Co., 4 Cir., 90 F. 189, 195; Wever v. Dakin, 5 Cir., 81 F.2d 831, 833; Queenan v. Mays, 10 Cir., 90 F.2d 525, 531; Spiller v. St. Louis & S. F. R. Co., 8 Cir., 14 F.2d 284, 288. Professor Pomeroy thus states the rule here applicable in a paragraph (1 Pomeroy Equitable Remedies § 21) quoted with approval by this court in Schmelz Liquidating Corporation v. Williams, supra: "Laches, in legal significance, is not mere delay, but delay which works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law, but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground of denial of relief."

Appellees rely upon our decisions in Poole v. Elliott, 4 Cir., 76 F.2d 772, 774, and Standard Oil Co. v. Elliott, 4 Cir., 80 F.2d 158; but the distinction is obvious. Those were cases seeking to establish trusts with respect to deposits made when the bank was alleged to be hopelessly insolvent to the knowledge of its officers; and in denying relief on the ground of delay we said in the first case (the ruling in the second being to like effect): "Plaintiff waited more than sixteen months after the appointment of receivers in the court below before filing his petition. More than three years have now elapsed; and, in the meantime, the liquidation of the bank's affairs has gone forward, claims have been proven, the secured debts have been discharged and a dividend has been paid to general creditors. To permit a depositor, at this late day, to raise the contention that assets which the receivers have already administered were impressed with a trust in behalf of depositors during the period of hopeless insolvency, would result in endless confusion and probably in much injustice to other persons interested in the prompt winding up of the estate."

In the following paragraph of the opinion in that case we distinguished it from the ordinary case of laches, saying: "It must be remembered that a petition to establish a trust and trace trust funds by a depositor in the situation of petitioner here is very different from the ordinary petition to have a trust declared and trust funds traced to assets in the hands of receivers. Where there has been a conversion of trust funds by the bank, or where a depositor has made his deposit so near the time of the bank's closing that the proceeds of the deposit are actually in the hands of the receiver and can be segregated without resort to legal fictions, the suit to establish the trust, as a practical matter, affects no one but petitioner and the receivers, and can

go forward without disturbance to the administration of the estate. But, where the bank has been hopelessly and irretrievably insolvent over a long period, and the depositor must rely on the rule laid down in such cases as Brennan v. Tillinghast (C.C. A.6th) 201 F. 609, 612; Empire State Surety Co. v. Carroll County (C.C.A.8th) 194 F. 593, 605, and Schumacher v. Harriett (C.C.A.4th) 52 F.2d 817, 82 A.L.R. 1, to trace the trust funds, i. e., on the presumption that the bank respected the trust and preserved the trust fund, making payments in the meantime from other moneys (obviously a pure fiction in the case of a constructive trust), it is clear that other depositors as to deposits made during this period are entitled in equity to the same relief as petitioner, and in granting relief the court should see that their rights are protected. In such cases, therefore, the establishment of a trust in favor of depositors on the ground of hopeless and irretrievable insolvency would affect a large part of the obligations to depositors and probably all of the cash assets passing into the hands of the receivers; and the court should not entertain a petition asking such relief unless petitioner has acted promptly on learning of the bank's insolvency and before matters have progressed to the point that relief cannot be afforded without injustice to other persons interested in the administration of the estate. Such a case is peculiarly one for the application of the maxim, 'vigilantibus non dormientibus aequitas subvenit.' "

In the case at bar no difficulty in granting to the receivers of the national banks the relief to which they are entitled has resulted from their delay in the filing of their petitions. The state bank receivers have in their hands ample funds from which restitution can be ordered; and this can be done without disrupting in any way the orderly administration of the estate or prejudicing the just rights of any of the creditors.

We feel that we should say in closing that in our opinion neither the learned District Judge who authorized the acceptance of pledges of collateral as security for the deposits of the receivers, nor the receivers themselves or their attorneys, are subject to any criticism in connection with the transactions here under consideration. That national banks had the power to pledge assets to secure deposits of this character was an opinion widely entertained at' the time. See Schumacher v. Eastern Bank & Trust Co., 4 Cir., 52 F.2d 925, and cases there cited. And certainly the able counsel for receivers were acting with the utmost diligence when they sought an expression from the Comptroller of the Currency when the Circuit Court of Appeals of another Circuit expressed a contrary view. That the practice of pledging assets as security for deposits was widespread at the time is abundantly established by the testimony of the witness Lyons, who says that following the decision in the Pottorff Case the Comptroller found so many cases of pledged assets that decision was necessarily made to handle them in the order indicated by the state statutes of limitations applicable. That loss should be sustained by the state bank receivers is unfortunate; but we see no alternative if we are to follow the decision in the Pottorff Case, which we are in duty bound to do.

Reversed.

*Writ of certiorari denied 58 S.Ct. 765, 82 L.Ed. —.