### HANNA v. COMMISSIONER OF INTERNAL REVENUE (two cases).
#### Nos. 11070, 11071.

Circuit Court of Appeals, Ninth Circuit.

May 21, 1946.

136

A. Calder Mackay and Adam Y. Bennion, both of Los Angeles, Cal., for petitioners.

Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott, Harold C. Wilkenfeld, and Spurgeon Avakian, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The Commissioner of Internal Revenue found deficiencies in income tax returns of Byron C. Hanna and his wife, Daisy May Hanna, for the year 1940. They each filed a petition with the Tax Court of the United States, alleging error in the denial of the application of Section 107 of the Internal Revenue Code [1] to a fee re-

[1] "§ 107. Compensation for services rendered for a period of five years or more. In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable

ceived in 1940 by a law partnership of which Mr. Hanna was an equal partner with Mr. Harold Morton and accounted for by Mr. and Mrs. Hanna as community income received over a period in excess of five years by the partnership. The proceedings under the petitions were consolidated for hearing. The Tax Court affirmed the Commissioner's finding and disallowed the application of Section 107. The Hannas petition this court to review the Tax Court's decisions.

The case turns on whether or not the facts are within the provisions of Section 107 of the Internal Revenue Act. Specifically, if not less than 95% of the fee earned through five years is paid in any one year after the work has been completed, the tax shall not exceed the total tax that would have been payable had the fee been received in equal annual amounts throughout the work period.

The facts presenting the problem are briefly as follows: Etienne Lang, acting as agent for a family known as the Lazards, employed the law partnership of Hanna and Morton in October, 1932, to file suit on behalf of the Lazards in regard to a claim against the Anglo-California National Bank of San Francisco, Herbert Fleishhacker, its president, and others. A sum of $27,500 was provided by the Lazards to defray costs and expenses of the litigation with the understanding that if the costs and expenses should exceed that sum, the law firm would bear the increase, but that if the costs and expenses should be less than that amount, the balance would belong to the law firm. The firm was also to receive 15 percent of the sum recovered in the litigation.

The cost and expenses fund was received by the firm in trust and was so treated on the firm's records under an account entitled "Lazard Matter, Trust Account", but was carried in the firm's general bank accounts all of which was agreeable to the agent Lang.

At the request of Morton, and with Lang's approval, sums amounting to $5,500 were withdrawn by the firm during the years 1932 through 1936 upon account of time and effort which the firm had devoted to the litigation. Each withdrawal was conditioned upon the return of an equal sum if such should become necessary to cover the expenses of the litigation.

The law firm deposited $20,000 of the fund in savings accounts, and interest thereon accrued in the sum of $1,168.86. It was agreed that the earned interest money should belong to the firm, but that it would be returned if necessary to complete payment of expenses.

On January 19, 1940, at the successful conclusion of the litigation Hanna and Morton received $111,588.84 together with $2,429.35 assessed costs and the balance in the trust fund of $7,769.55 or a total of $121,787.74 [2] Byron C. Hanna and Daisy May Hanna sought to spread their portion of the fee over a period of five years under Section 107 of the Internal Revenue Code, but such disposition was disallowed.

The Tax Court determined that the $5,500 in withdrawals from the trust fund and also the accrued interest in the sum of $1,168.86 on the trust fund constituted payments on the total fee for legal services rendered *when and as received* and that, therefore, less than the statutory limitation in Section 107 of 95% of the fee (actually 94.8%) was received upon completion of the litigation. Thus, the Tax Court found

---

to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period." 26 U.S. C.A. Int.Rev.Code, § 107, prior to amendment.

[2] Total received by firm from all sources:
$111,588.84—The firm's percentage of the recovery.
2,429.35—Costs awarded against defendants.

7,769.55—The balance remaining in the trust fund.

---

$121,787.74—Paid upon completion of litigation.
5,500.00—Withdrawals from trust fund.

---

$127,287.74
1,168.86—Interest on trust fund.

---

$128,456.60—Total.

that the taxpayers had failed to meet the requirements of Section 107.

## Trust Funds

■ The Tax Court decided that the $27,500 delivered to the law firm on October 15, 1932, did not constitute compensation for personal services at the time it was delivered and this, at least, is tacitly conceded by the government on this appeal.

It is clear under the facts that the firm had no "claim of right" to the fund prior to a determination of all expenses to be paid out of it, and it has been stated by the Supreme Court in North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, and by this Circuit Court in Wilcox v. Commissioner, 9 Cir., 1945, 148 F.2d 933, that income is taxable only when it has been received under a "claim of right". United States v. S. S. White Dental Mfg. Co., 1927, 274 U.S. 3982, 47 S.Ct. 598, 71 L.Ed. 1120; Taylor v. Commissioner, 7 Cir., 1937, 89 F.2d 465; Stoner v. Commissioner, 3 Cir., 1935, 79 F.2d 75, 76; Allen v. Commissioner, 5 T. C. 1232.

We are of the opinion that the fund, as such, did not constitute compensation for personal services prior to the conclusion of the litigation.

## Advances Made From Trust Fund

■ Did the withdrawal of the $5,500 from the trust fund constitute payment on the fee at the time of withdrawal?

The Commissioner and the Tax Court rely largely upon North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, in which Justice Brandeis stated the following: "The net profits earned by the property in 1916 were not income of the year 1922— the year in which the litigation with the government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return even though it may

still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

On the other hand petitioners claim that the express condition upon which the advances were made, to-wit, that the fund would be reimbursed in case the expenses of the litigation should exhaust the fund on hand, demonstrates that the withdrawals were conditional advances rather than payments on the fee. They attempt to distinguish our case from the North American case upon the premise that the money received in the cited case was received under an unrestricted claim of right, whereas, in our case the law firm received the advances as granted favors and upon conditions which made it uncertain whether or not the sums withdrawn would have to be returned before or at the conclusion of the litigation. See Keasbey & Mattison Co. v. United States, 3 Cir., 1943, 141 F.2d 163, 166; Parkford v. Commissioner, 9 Cir., 1943, 133 F.2d 249, 146 A.L.R. 57.

It will be remembered, however, that it was provided in the original contract that the trust fund advanced was a rough estimate of the probable costs and expenses of the litigation and that if the costs and expenses should be less than the estimate the balance would be the property of the law firm. On the other hand if the costs and expenses should exceed the estimate, the law firm was to stand the excess. Thus the agreement to replace the sums withdrawn means little if anything. The Tax Court viewed the payments out of the trust fund as modifications of the original employing contract, made only after it had become evident that the whole fund would not be used. Viewed in this light, the payments would be partial payments on the total fee and would be income in the year received. The firm's treatment of these payments was not inconsistent with this view. The Commissioner and the Tax Court are administrative agencies, especially authorized by the government and especially equipped to solve and determine questions of the nature under consideration. We think the applicable principles so thoroughly treated in Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.

Ct. 239, 88 L.Ed. 248, precludes our right to disturb the decision reached by the Tax Court on this point.

### Interest

 The next question is whether the interest, in the amount of $1,168.86, which accrued on the trust fund, constituted a part of the fee earned by the law firm for services rendered.

It should be first stated that the accrued interest was never contemplated by the parties as any part of the fixed compensation contracted to be paid, nor was the law firm under any obligation to deposit the trust fund at interest. The money was paid to the firm in trust to be handled in the manner suiting the trustees. The money could have been placed in a safety deposit vault. Placing money in a reliable bank on an interest bearing deposit is not an unusual practice. There appears to have been doubt as to the real owner of the interest and it was solved by the free concession on the part of the Lazards that the law firm should have it. The concession appears to have been made through good will and in the nature of a bonus. The full compensation for the services was clearly fixed by the original employing agreement and interest on the trust fund was not specifically or inferentially a part of it. If the Lazards had any right to the interest, their concession that it should be retained by the law firm as its own was a pure gratuity and was not part of the legal fee.

The authorities are in accord with this view. It has been held that where a United States District Court Clerk collects interest on funds in his custody, which he may keep, it is not a part of the emoluments of his office. United States v. MacMillan, 1920, 253 U.S. 195, 40 S.Ct. 540, 64 L.Ed. 857. See also Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Smith v. Jackson, 5 Cir., 1917, 241 F. 747; Id., 1918, 246 U.S. 388, 38 S.Ct. 353, 62 L.Ed. 788; United States v. Smith, 1895, 158 U.S. 346, 348, 15 S.Ct. 846, 39 L.Ed. 1011.

### Conclusion

By virtue of the foregoing we find that more than 95% of the fees were paid upon completion of services rendered by Hanna and Morton, and thus we are of the opinion that Section 107 was applicable to the problem of assessing the income taxes of the petitioners.

The decisions in cases No. 11,070 and No. 11,071 are reversed, and the cases are remanded with instructions to the Tax Court to proceed in accordance with the above opinion.